11944 ·

## ATLANTIC COAST LINE RAILROAD COMPANY v. COLUMBIA SALVAGE CORPORATION

### (135 S. E., 877)

1. Appeal and Error—Application of Doctrine of *res ipsa loquitur* Will Not be Considered Where Not Raised in Trial Court.—Question of application of doctrine of *res ipsa loquitur* should be raised in trial Court, to warrant consideration on appeal.

2. Witnesses—Refusal to Permit Expert Witness to Express Opinion on Question of Defendant's Negligence, Except in Answer to Hypothetical Question, Held Not Error.—In railroad's action against salvage corporation for damage to box cars from explosion of powder magazine, refusal to permit an expert government witness to state his conclusions on question of negligence of defendant, except in answer to hypothetical question, *held* not error, where facts upon which his opinion was sought were in issue.

3. Trial—In Railroad's Action for Damages to Cars from Explosion of Powder Magazine, Withdrawal of Question of Defendant's Negligence in Character of Tools and Appliances Furnished its Employees Held Error.—In railroad's action against salvage corporation for damage to box cars from ·explosion of powder magazine, instruction that jury must not consider that there was any evidence of negligence of defendant in character of tools and appliances furnished its employees *held* error.

4. Trial—In Railroad's Action for Damages to Cars From Explosion; Withdrawal of Question of Defendant's Negligence in Character of Working Place Furnished Employees Held Erro-

neous.—In railroad's action against salvage corporation for damage to box cars from explosion of powder magazine, instruction that jury should not consider that there was any negligence of defendant in the character of the place furnished its employees in which to work *held* erroneous.

5. Explosives—Failure to Warn of Danger of Explosion of Powder Magazine Held Not Negligence, Where Danger Was Known.— In railroad's action against salvage corporation for damage to box cars from explosion of powder magazine, instruction that defendant was not negligent in failing to warn plaintiff as to danger *held* not error, where danger was known to plaintiff's employees.

6. Negligence—Where There is no Evidence of Negligence, Court Should so Declare.—When there is no evidence, either direct or circumstantial, to sustain a charge of negligence, it becomes duty of Court, as a matter of law, to so declare.

7. Appeal and Error—Dismissal of Appeal for Violation of Court Rule Held Unwarranted.—Dismissal of appeal for transgression of laws of Court, by submission of long, involved, and argumentative exceptions, *held* unwarranted, in view of grave consequences and statement of complaining counsel.

8. Appeal and Error—In Action for Damages to Cars From Explosion of Powder Magazine, Refusal to Permit Plaintiff to Show Comparison of Other Points, Where Powder Was Salvaged, Held Not Ground for Complaint.—In railroad's action against salvage corporation for damage to box cars from explosion of powder magazine, refusal to permit plaintiff to show a comparison of ·operations, carried on at other points, of salvaging powder, *held* not ground for complaint, in view of defendant's offer to admit such testimony if operations were carried on under similar circumstances.

Before Johnson, J., Charleston, April, 1924.   Reversed and new trial granted.

Action by the Atlantic Coast Line Railroad Company against the Columbia Salvage Corporation.   Judgment for defendant and plaintiff appeals.

*Messrs. FitzSimons & FitzSimons,* for appellant, cite: *High degree of care required of one using dangerous agencies:* 110 S. C., 566; 95 S. C., 230; 90 S. C., 38; 69 S. C., 305; 18 R. C. L., 789. *Courts take judicial notice of danger in handling gun powder:* 11 R. C. L., 653; 18 R. C. L., 789; 20 R. C. L., 51. *Construction of magazine admissible to show negligence:* 22 S. C., 476. *Employer liable*

*for torts of agent:* 92 S. C., 108; 77 S. C., 549; 68 S. C., 59; 58 S. C., 143; L. R. A., 1917-F, 1043; 10 L. R. A. (N. S.), 367.    *Duty of one using dangerous agency to consider safety of surrounding territory:*    124 S. C., 389; 120 S. C., 7; 115 S. C., 376; 69 S. C., 305; 32 S. C., 593; 95 S. E., 851; 66 S. E., 433; 48 A. S. R., 147; 117 A., 598; 109 A., 745; 109 A., 743; 109 A, 309; 271 F., 900; L. R. A., 1917-F, 1043; L. R. A., 1917-A, 1290; L. R. A., 1915-E 479.    *Duty of employer to warn employee of dangerous nature of agencies used:*    111 S. C., 437; 104 S. C., 410; 80 S. C., 248; 10 L. R. A. (N. S.), 397; 19 L. R. A. (N. S.), 997, note.    *Independent contractor having contract with government may be sued:*    108 U. S., 317; 56 Am. Rep., 6; 17 Am. Rep., 258; 11 R. C. L., 684.    *Operators of magazine not relieved from liability for negligence because party damaged knew of existence of magazine:* 48 A. S. R., 147; 19 A. S. R., 34; 11 R. C. L., 661.    *Bailee may recover for damage to bailed property:* 3 R. C. L., 127.    *Rule of res ipsa loquitur applies to explosion cases:* 48 A. S. R., 146; 8 A. L. R., 493; 11 R. C. L., 670; 20 R. C. L., 192.    *Rule of res ipsa loquitur applies to cases of injury to passengers on railroads:* 86 S. C., 105; 83 S. C., 66; 82 S. C., 345; 77 S. C., 434; 62 S. C., 139; 61 S. C., 345; 55 S. C., 387.    *Rule of res ipsa loquitur applies to cases of injury to stock by railroads:* 52 S. C., 323; 20 S. C., 250; 4 Rich. L., 329.    *General allegations of negligence in first cause of action not restricted by specific allegations of negligence in second cause of action:* 82 S. C., 347; 76 S. C., 557.    *Any competent evidence admissible to support general allegation of negligence:* 83 S. C., 509; 82 S. C., 345; 53 S. C., 209; 47 S. C., 28. *Positive testimony of direct cause of explosion not obtainable:* 64 S. C., 370; 48 A. S. R., 146.    *Evidence regarding* insurance carried by plaintiff on damaged property improper: 127 S. C., 505; 125 S. C., 442; 120 S. C., 285; 92 S. C., 236. *Public interest in railroads protected:*    Crim. Code, 1922, Sec. 87; Civ. Code, 1922, Sec. 4976.

*Messrs. Buist & Buist,* for respondent, cite: *Exceptions:* Rule 5 of Supreme Court, 1922, Sec. 6. *Appeal should be dismissed for failure to follow rule regulating exceptions:* 100 S. C., 311; 99 S. C., 200; 93 S. C., 367; 64 S. C., 311. *Rules regulating expert testimony:* 91 S. C., 523; 90 S. C., 296; 59 S. C., 318; 37 S. E., 938; 38 S. C., 199; 32 S. C., 400; 20 S. C., 441. *Improper for plaintiff to introduce evidence of insurance carried by defendant:* 125 S. C., 442; 118 S. E., 802; 120 S. C., 285; 113 S. E., 118; 92 S. C., 236. *Rule of res ipsa loquitur:* 224 U. S., 89. *Application of rule of res ipsa loquitur to explosion cases:* 151 N. C., 284; 66 S. E., 135; 140 N. C., 115; 52 S. E., 121; 140 N. C., 28; 52 S. E., 233; 117 N. C., 189; 23 S. E., 173; 164 Ala., 216; 51 So., 419; 20 So., 1003; 121 Md., 448, 88 A., 250; 214 Pa., 244; 63 A. 601; 190 Pa., 350; 42 A. 707; 52 Pa. Sup., 314; 207 Mass., 102; 92 N. E., 1010; 1915 Mass., 327; 81 N. E., 256; 181 Mass., 3; 122 N. Y., 118; 25 N. E., 259; 31 R. I., 562; 114 S. W., 186; 108 S. E., 1044; 126 Mo. App., 684; 105 S. W., 671; 202 Mo., 576; 101 S. W., 32; 22 Mont., 445; 56 P., 867; 107 Cal., 549; 287 F., 797; 236 F., 690; 119 F., 572; 15 Wall., 524. *Application of rule of res ipsa loquitur to cases of injury to stock by railroads:* 4 Rich. L., 329. *Application of rule of res ipsa loquitur to cases of injury to passengers on railroads:* 118 S. C., 153; 110 S. E., 121; 113 S. C., 261; 102 S. E., 11; 91 S. C., 139, 74 S. E., 363; 88 S. C., 91; 70 S. E., 414. *Application of rule of res ipsa loquitur to cases of improper transmission of telegrams:* 90 S. C., 503; 82 S. C., 87; 69 S. C., 504.

May 24, 1926.

The opinion of the Court was delivered by Mr. Acting Associate Justice Purdy.

This action was commenced for the recovery of damages to 94 railroad box cars, caused by the explosion of a powder magazine on the reservation of the United States Ordnance Depot, about seven miles north of the city of Charleston, on

April 13, 1922. Actual and punitive damages are claimed to the amount of $35,000.

The case was tried before the Hon. J. Henry Johnson and a jury, and resulted in a verdict for the defendant, on April 17, 1924.

There were two causes of action set up in the complaint, and a motion to require the plaintiff to elect was refused. Briefly stated, the pleadings are to the effect:

The complaint alleges that the defendant is a corporation under the laws of New York, and was engaged in salvaging ammunition under a contract with the United States Government at various points throughout the country, where the ammunition was stored, and was acting as an independent contractor. That, at the time of the alleged injury, the defendant was principally engaged in salvaging ammunition for a three-inch gun, and was removing black powder and storing it in the powder magazine near by. That the magazine was constructed by the defendant by filling empty boxes with sand or earth and placing the boxes one on top of the other, and then covering it with tarapulin. That, with full knowledge of the danger from explosion, the defendant negligently, recklessly, and willfully located the powder magazine only about 200 feet away from the car storage tracks, where the plaintiff had 94 railroad box cars which either belonged to it, or were in its custody under the interchange rules and regulations between the plaintiff and other railroad companies, and for the loss of which cars the plaintiff was responsible. That on April 12, 1922, the defendant had about 25,000 pounds of black powder stored in the magazine in 25-pound keg containers, and on that day the powder exploded, mangling and killing one Hill, an employee of the defendant, when working in or near the magazine, and wrecking doors and windows in buildings more than half a mile away, and shattering and wrecking most of the box cars of the plaintiff and cars for which it is responsible, to its actual damage $29,246. That the plaintiff was in no way re-

sponsible for the explosion, and that the magazine and pow-
der were in the exclusive control and management of the de-
fendant, and that the injury and damage was due solely to
the acts of the defendant, its officers, agents, and employees,
and would not have occurred if the defendant had exercised
proper care in the location, management, method of handling,
and operation of the powder magazine and powder, charging
the defendant with negligence, recklessness and willfulness in
relation thereto.

The second cause of action is identical with the first cause
of action, except that it undertakes to specify the acts of
negligence, and of willfulness, as follows, viz.:

"(a) In causing and allowing the explosion of a powder
magazine in a dangerous locality.

"(b) In the performance of the hazardous work of sal-
vaging ammunition, locating a powder magazine, carrying
and storing large quantities of powder therein in an unsafe
manner, at an unsafe place with insufficient ignorant and
inexperienced employees, and furnishing same with unsafe
tools and appliances.

"(c) In locating a dangerous powder magazine in close
proximity to said railroad box cars, with full knowledge of
the danger to same from explosion.

"(d) In employing ignorant, unskilled, and inexperienced
workmen about a powder magazine.

"(e) In failing to make proper inquiry as to the capacity,
intelligence, and experience of the employees placed by it in
charge of or working about said dangerous powder maga-
zine, and in selecting incapable, ignorant, and inexperienced
employees for said work.

"(f) In failing to furnish its employees with proper,
safe, and suitable appliances and tools and a safe place to
work, and in furnishing said employees about said powder
magazine, with unsafe, dangerous, and improper tools and
appliances for the handling and storing of powder therein.

"(g) In allowing its employee to store powder in unsafe

kegs with insecure fastenings by the use unsafe tools; and in failing to warn and instruct its employee of the dangers incident to his work; and in failing to notify and warn plaintiff of danger to its cars from the proximity of said powder magazine and of explosion from the manner of the work."

The answer of the defendant denies all except the formal allegations of the complaint, either by a general or special denial. Among other things, it admits that it had a contract with the government, as stated, and admits that sundry damage was done in the neighborhood of the magazine by the explosion, and that one of the employees of the defendant lost his life.

The plaintiff filed 20 exceptions, with many subdivisions.

The testimony tends to show that the defendant, having entered into a contract with the United States Government for salvaging the ammunition at the place stated, sought to have the magazine located in the government magazine area and farther away from the railroad, but the government would not give its consent. The magazine was located by the officers of the government midway between the Seaboard Air Line Railroad and the storage tracks on which the cars were damaged, and from 150 to 200 feet away from the place at which the damaged cars were stored when the explosion took place.

All the witnesses examined on this point stated that it was known to be dangerous to have the magazine located at this spot, but the defendant stated that it was under government supervision, and it had to accept the spot as directed by the government officials. An inspector of the Bureau of Explosives, a government agency of the Interstate Commerce Commission, testified that a powder magazine of 20,-000 pounds capacity should not be located closer to railroad tracks than 635 feet, if barricaded, and 1,055 feet, if unbarricaded.

Precautions were taken to prevent sparks from reaching the magazine, by having the ground for some distance

around the magazine plowed and all weeds that remained pulled up, and the ground was sprinkled from time to time during the day, and inspections were made at certain intervals daily by the officers of the government.

The powder was taken from the shells and sifted, in order to get out any foreign matter and to break up the lumps that might be formed, and then the powder was put in kegs and a felt pad was put over the keg and fastened down, and a small brass hammer was furnished Hill for this purpose.   It appears that sifting operations were conducted sometimes within 30 feet or less of the magazine and a point of safety would have been 100 feet away, and that sometimes in sifting the powder, small quantities of it would drop on the ground.   Several match heads were found in the powder.

There were at one time about 600 negroes employed on the premises, but none of them were injured.   At the time of the explosion, the man, Hill, was in charge of putting the powder in the kegs and closing the kegs, and he was at or near the magazine at the time.   Nothing is known of Hill or his antecedents.   He appeared on the premises some three weeks before and applied for a job, and upon being tried out, was found to be more efficient than any person employed before that time in handling the powder, and he was put in charge of that branch of the work.   Hill said that he was an ex-soldier from Florida, and had been a gunner's mate in the recent war.   It is claimed that he understood the nature of explosives and the manner of handling them.   It is said that, when given a brass hammer with which to fasten the kegs, he said that it would be foolish to use a small copper hammer.   He was given shoes with rubber heels and rubber soles, and he complained that the rubber hurt his feet, and the superintendent of the defendant company testified that he did not know whether Hill used these shoes or not.   Hill was also furnished a one-half inch copper rod, made to turn the

slides on the cans. A few minutes before the explosion, Hill applied at a blacksmith shop near by for a hatchet, and, being unable to obtain it, asked for a chisel stating that he wished to get into a rusty can. He procured the chisel, and just about the time that he got back to the point at which he was working, near the magazine, there was a sharp sound of an explosion, and then a heavy detonation following that, making the greater explosion. Hill was blown into fragments, and the damage complained of was done.

The theory of the plaintiff is that the damage occurred from the use of the chisel by Hill in striking it upon other metal, as indicated by the light explosion, followed by the heavier explosion; that, from the first explosion, there was a communication to the magazine, causing it to blow up.

The defendant, on the other hand, takes the position that while, theoretically, a spark may be produced by a contact of metal with metal of the kind referred to in the case, practically, the witnesses had never seen such a spark, and that experiments had been made and sparks were not produced. The witnesses for the defendant also said that black powder is very treacherous and is liable to blow up without any cause whatever, and furthermore, that firearms were often discharged in that vicinity and that a bullet might have caused the explosion, as indicated by the sharp, not very loud sound preceding the blowing up of the magazine. It was also contended that the explosion might have been caused from "static conditions" (sparks), or from a match head having been put in the powder by an enemy of the government, several match heads having been found, as stated.

This is a brief statement of the situation, and, for obvious reasons, comment is not made on any of the testimony. It may be added that the defendant further contended that the plaintiff placed its car upon the service tracks used by the government and that it did so as matter of

convenience and knowing the dangerous proximity to the magazine, assuming the risk incident to having the cars on the tracks, while, on the other hand, the plaintiff claims that it placed its cars on the tracks with the consent and at the invitation of the government, and that the government desired them to be there so that it could get cars promptly for shipments, without having to wait, when cars were needed.

The question is, whether, under the facts in the case, the law was properly declared to the jury. We will not undertake to pass upon exceptions in the order in which they appear.

Among other positions taken by the appellant, it 1 complains of error in that his Honor, the circuit Judge, did not apply the doctrine of *res ipsa loquitur.* There are not any decisions in this State on this point, and the decisions in other jurisdictions are conflicting. The respondent takes the position that this question was not raised in the circuit Court; and, in fairness to the trial Judge, we think that we ought to so hold.

Exception is taken to the exclusion of the testimony of Capt. Milton, an expert government witness, who was asked to state his conclusions on the question of negligence of the defendant. The facts upon which the opinion of the witness was sought were in issue, and his testimony was not admissible, except upon a hypothetical statement of facts. *Easler v. Railway Co.,* 59 S. C., 318; 37 S. E., 938. The testimony of the witness was not sought to be elicited in this manner, and there was no error in excluding it. It appears that the United States government made an investigation, and the plaintiff sought to show the result of the investigation. This evidence was properly excluded. It was hearsay as to the defendant.

The appellant complains of error in charging the 3, 4 jury that the jury must not consider that there was any evidence of negligence on the part of the defend-

ant in the character of the tools and appliances furnished to the defendant's employees. This was one of the issues of the case concerning which there was a difference of opinion and conflicting testimony, and it was for the jury to say whether the character of the implements used produced the injury and damage complained of. This exception is sustained. Complaint is likewise made of the charge of his Honor that the jury should not have considered that there was any negligence of the defendant in the character of the place furnished the defendant's employees in which to work. This was an issue in the case, under the testimony to be submitted to the jury, and there was error in not so holding.

There is complaint that his Honor charged the jury that there was no evidence of negligence in the character of the kegs furnished in which to store the powder, and that the defendant was not negligent in failing to warn and instruct its employees as to the danger of the work, and in failing to warn the plaintiff of the danger to its cars. While negligence is a mixed question of law and of fact, when there is no evidence either direct or circumstantial to sustain a charge, then it becomes the duty of the Court, as a matter of law, to so declare, and we find no evidence in the record to show that improper kegs were used. The testimony shows that Hill, the employee, knew the danger, and every one working around the powder magazine knew that it would be a dangerous place and would be deemed to so know, as a matter of law, and the employees of the plaintiff, while they could not be held to know just what operations were going on at the powder magazine, likewise knew that it was an extremely hazardous undertaking and therefore need not have been warned, and there was no error in this respect.

Counsel for the respondent asks the Court to dismiss the appeal of the plaintiff, upon the ground that is counsel has transgressed the laws of the Court by

submitting long, involved, and argumentative exceptions. While, in the opinion of the Court, the exceptions could have been greatly abbreviated, in a matter of so grave consequence, it would not feel warranted in applying the rule, especially in view of the fact that after most drastic comments by the counsel for the respondent, he says:

"The suggestion that the Court should dismiss the case for volation of its rule, the facts here pointed out as to the character of the voliation of the rule, and the comments theron are not intended as any reflection on the able, learned, and distinguished counsel for the appellant."

The lengthy and involved exceptions do not involve the merits of the case, but add greatly to the labor of the Court.

The plaintiff complained further that it was not permitted to show a comparison of operations, carried on at other points, of salvaging powder. As to this, he cannot complain, and there was no error for the reason that the counsel for the defendant offered to admit such testimony, if shown that the operations were carried on under similar conditions to those at Charleston.

There are other exceptions which need not be considered, as the matter to which they relate are not likely to arise at a subsequent trial. The judgment is reversed, and a new trial is granted.

Reversed.

MESSRS. JUSTICES WATTS and COTHRAN concur.

MR. ACTING ASSOCIATE JUSTICE MARION dissents.

MR. CHIEF JUSTICE GARY did not participate.