18803

Huel C. (Buck) BAILEY, Appellant, v. Ellis C. MacDOUGALL, Director of the Department of Corrections and the State of South Carolina and Morris Funderburk, Supervisor of Lancaster County, Respondents.

(162 S. E. (2d) 177)

*Messrs. James P. Mozingo, III,* and *D. Kenneth Baker* of Darlington, *for Appellant,*

292

*Messrs Daniel R. McLeoad, Attorney General,* and *Edward B. Latimer, Assistant Attorney General,* of Columbia, and *George F. Coleman, Solicitor,* of Winnsboro, *for Respondents,*

*Messrs. James P. Mozingo, III, and D. Kenneth Baker* of Darlington, *for Appellant, in Reply,*

June 12, 1968.

BUSSEY, Justice.

This is a habeas corpus proceeding in which the petitioner Bailey appeals from an order of the circuit court denying him relief following a hearing.

Bailey is serving a life sentence for murder, having plead guilty, with a recommendation of mercy, at the February 1965 term of the Court of General Sessions for Lancaster County. His petition, seeking only a new trial, was dated September 28, 1966, and the hearing thereon was held on December 30, 1966, the order of the court denying relief being dated September 30, 1967.

At his trial in February 1965, Bailey was represented by three retained lawyers of experience and ability. His wife and two of his brothers-in-law were charged with conspiracy to murder and with being accessories before the fact to murder. These defendants were also represented by retained counsel. The trial commenced on a Tuesday and proceeded until Friday afternoon when an agreement was reached by counsel with the solicitor, pursuant to which Bailey pled guilty to murder and the other defendants to the charge of conspiracy to murder.

It is Bailey's contention that he was not in control of his mental faculties at the time he entered the plea of guilty and that such was not voluntarily, knowingly and understandingly made. His petition asserted that he was involuntarily under the influence of narcotics at the time, but most of the evidence was, without objection, addressed instead to the question of whether he was in a state of amnesia. His contention that he was involuntarily under the influence

of narcotics is, we think, clearly disposed of adversely to Bailey by medical evidence which he himself offered. The real issue for determination, therefore, was whether or not he was in a state of amnesia when he entered his plea. The lower court found factually that Bailey had not sustained the burden of proving his contention as to his mental state; that he was in control of his mental faculties, and that his plea was voluntarily, knowingly and understandingly entered.

The trial record indicates that at the time of his plea some ten questions concerning the voluntariness of his plea were intelligently and knowingly answered by Bailey. Quite a number of witnesses present during the course of the trial and the plea, testified generally to the effect that to all outward apearances Bailey was perfectly normal and fully in control of his faculties throughout the trial and plea. There is evidence that he was nervous and that he tired some as the trial progressed, which would be quite natural for any defendant upon an extended trial for a capital offense.

Bailey is a partially disabled veteran of World War II as a result of several wounds and operations, and, among other things, suffers from a nervous condition termed by a psychiatrist as "psycho-neurotic reaction, anxiety reaction chronic of a moderate degree" characterized by symptoms which include headaches, and nervous episodes in which a patient feels shaky and suffers from a nervous stomach accompanied by occasional vomiting. Bailey testified that on Wednesday afternoon, the second day of his trial, he completely lost consciousness and knew nothing of the events transpiring thereafter, including his plea on Friday afternoon. According to him, he did not know that he had entered the plea until the ensuing Saturday afternoon when informed of such by his wife, who incidentally, did not testify in the habeas corpus hearing.

One of Bailey's attorneys, Mr. Jones, testified as to a conversation with Bailey shortly after his plea and sentence,

and as they were leaving the court room, which would indicate that Bailey was not then conscious of what had occurred shortly before. This attorney, however, did not attempt to report the conversation to the trial judge. The record does not show that he reported such to anyone, prior to the institution of this proceeding some nineteen months later. He offered no satisfactory explanation for having apparently kept the conversation to himself.

On Saturday morning following Bailey's sentence, he was taken by the jailer to Dr. Horton, County physician, because of a complaint of nausea resulting from nervousness. Dr. Horton testified that at the time Bailey was confused, tense, depressed and distraught and under the impression that he had to go back to the court house for his trial, which had ended the previous afternoon. That the only occasion on which Dr. Horton saw Bailey and he was not asked to express any opinion as to what Bailey's condition may or may not have been on the previous afternoon.

Bailey's chief medical witness was the late Dr. Sol McLendon, formerly with the South Carolina Department of Mental Health. Until the time of the hearing Dr. McLendon had seen Bailey on only one occasion, which was December 14, 1961, when Dr. McLendon had done a special neuro-psychiatric examination of Bailey for the Veterans Administration in Columbia to determine his degree of disability and rating for the purposes of compensation. Such was Dr. McLendon's only examination and his diagnosis was, as hereinabove mentioned, "psycho-neurotic reaction, anxiety reaction chronic of moderate degree, etc."

He testified that a person in that condition could go into a period of amnesia in which there was a loss of memory or into a confused state in which the patient would be totally unaware of what was taking place, which state might last for a few hours or a few days. That such a patient, if in a state of amnesia, could enter a plea of guilty, sign his name, etc., without knowing what he was doing, and all the while

appear perfectly normal. That in such a patient undue emotional stress and strain can be provocative of such a confused state.

Dr. McLendon did not presume or pretend to know whether, in fact, Bailey was in a state of amnesia at the time of his plea. Even had he been present at the time, there was, according to the doctor, no test or method by which he could have determined whether Bailey was, or was not, in a state of amnesia. He was not asked upon a proper hypothetical question to express even an opinion as to whether Bailey was most probably in such a state at the time of his plea.

It is conceded that the findings of fact by the lower court must be upheld by this court if such findings are supported by competent and legally sufficient evidence. That the credibility of the witnesses and the weight of the evidence were for the lower court are prospositions which are not contested.

While there are a number of exceptions and three stated questions, there is actually only a single issue involved in the appeal. Simply stated, it is Bailey's contention that there is no competent evidence in the record which is legally sufficient to support the finding of the lower court that his plea of guilty was entered voluntarily while he was in control of his mental faculties. Such contention is predicated on the erroneous supposition that the record contains positive, uncontradicted medical evidence to the effect that Bailey was, in fact, in a state of amnesia at the time, and it is argued that lay testimony as to Bailey's apparent condition throughout the trial, and particularly at the time of his plea, is legally insufficient to overcome such positive medical evidence.

The contention that the record contains such positive medical evidence is based soley on the following question and answer in the course of the examination of Dr. McLendon.

"Q. You heard the testimony and you also heard the question asked of the defendant that if this was granted that he might face another and even if the conditions were adverse that he might face electrocution. Under these circumstances, in your examination of him at all, is there any reason to doubt that he is telling the truth?

"A. I think he was telling the truth."*

Far from the foregoing constituting any positive medical evidence of Bailey's mental condition at the time of the plea, such question and answer were, under the circumstances, actually improper and inadmissible, had such been objected to. Bailey's mental state at the time of his plea was the only ultimate fact in issue. Dr. McLendon had no actual knowledge of either the physical or mental condition of Bailey at any time near trial, nor did he have any actual knowledge of the other facts and events occurring in the course of or anywhere near the time of the trial. Therefore, any opinion on his part as to the mental state of Bailey at the time of his trial and plea would have been admissible only as an answer to a properly framed question based upon a hypothetical state of facts. The province of an expert is to draw inferences from, but not to decide, the facts of a case. The credibility of Bailey and the ultimate issue of whether he was at the time possessed of his mental faculties were both for the judge and not for the expert. *Easler v. Southern R. Co.*, 59 S. C. 311, 37 S. E. 938; *Atlantic Coast Line R. Co. v. Columbia Salvage Corp.*, 138 S. C. 113, 135 S. E. 877.

There being no positive, uncontradicted medical evidence in the record to the effect that Bailey was in a state of amnesia at the time of his plea, it becomes unnecessary for us to consider or decide whether lay testimony would be legally sufficient to overcome any such positive medical evidence. The medical evidence to the effect

* The doctor testified that he habitually gave his patients credit for telling the truth as to an asserted period of amnesia, since he had no way of knowing or determining the contrary.

that a person in a state of amnesia could appear perfectly normal, might well affect the weight, but the competence or admissibility of lay evidence as to the person's appearance. The weight and credibility of all the evidence were for the lower court and we are satisfied that the findings of the lower court are supported by competent and legally sufficient evidence.

The judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and Lewis and Brailsford, JJ., concur.

Littlejohn, J., disqualified.