Grant Alan WRIGHT, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 83–43.

Supreme Court of Wyoming.

Oct. 19, 1983.

Bruce P. Badley and Fred R. Dollison, Badley & Rasmussen, Sheridan, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Rowena L. Heckert, Asst. Atty. Gen., for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

A jury found appellant guilty of an unlawful delivery of Schedule I controlled substance, marijuana, in violation of § 35–7–1031(a)(ii), W.S.1977. He was sentenced to two to four years in the Wyoming State Penitentiary. The limits set by the legislature for incarceration upon violation of this section are not less than one nor more than ten years.

Appellant words the issue on appeal as follows:

"The District Court committed reversible error and abused its discretion in sentencing Grant Alan Wright, a first-time offender, to a term of from two to four years in the Wyoming State Penitentiary, in that:

"(a) the District Court did not give due consideration to Mr. Wright's petition for probation;

"(b) the District Court failed to set forth its reasons for denying probation;

"(c) the District Court ignored the recommendations expressed in the presentence report;

"(d) no aggravating circumstances were presented to support the District Court's sentence; and

"(e) the sentence of Grant Alan Wright to the State Penitentiary, without probation, was arbitrary and capricious."

We do not find an abuse of discretion, and we affirm.

In contending that the sentence was too severe, appellant points to the fact that he was 20 years old, a first time felony offender, an honor student at Sheridan College where he was enrolled as a freshman in a welding program, and a recommendation by a probation and parole agent that he be given probation. In response, appellee points to the sentence as being within the perimeters set by the legislature for the crime, to the consideration of probation by the trial court, to appellant's basic concern having to do with the manner in which he was found to be involved in the crime rather than with remorse at having committed the crime, to his testimony as to the amount of marijuana in conflict with that of the arresting officers, and to the serious nature of the crime.

Before addressing the specifics of the issue presented by appellant, we note that the standards under which a sentence is examined by us on appeal have been well established. We do not follow the common-law rule that a sentence is not subject to appellate review if it is within the limits set by the legislature.[1]

---

1. At the time of the commission of the crime and of the trial, § 6–1–105, W.S.1977, provided: "Within the limits prescribed by law, the court shall determine and fix the punishment for any felony or misdemeanor, whether the punishment consists of imprisonment, or fine, or both, and when any person is sentenced to imprisonment in the penitentiary, the court shall declare in its sentence, for what period he shall be imprisoned; and in all cases of a conviction of an offense, the court shall render judgment against the defendant for the costs of prosecution."

Such section is now replaced by § 6–10–104, W.S.1977, (1983 Replacement), which provides: "Within the limits prescribed by law, the court shall determine and fix the punishment for any felony or misdemeanor, whether the punishment consists of imprisonment, or fine, or both."

In most instances the legislature sets the "limits prescribed by law" for imprisonment in terms of a minimum and maximum number of years.

"In a number of cases * * * the courts have expressed an adherence to the common-law doctrine of nonreviewability of criminal sentences. The common-law rule provides, in essence, that an appellate court has no power to review a sentence which is within the limits prescribed for the offense. Although this rule has been the subject, particularly with regard to its application in the federal courts, of continuing debate, and despite the fact that there appears to be a trend away from the strict adherence to the rule, it has continued in force in a significant number of American jurisdictions." Annotation: Review for Excessiveness of Sentence in Narcotics Case, 55 A.L.R.3d 812, 822 (1974).

As long ago as 1927, we indicated that we would modify a legal sentence if the trial court abused its discretion in imposing it. *State v. Sorrentino*, 36 Wyo. 111, 253 P. 14, 16 (1927). Since then, we have repeatedly set forth the fact that a sentence will be reviewed for abuse of discretion. *Cavanagh v. State*, Wyo., 505 P.2d 311 (1973); *Peterson v. State*, Wyo., 586 P.2d 144 (1978); *Sanchez v. State*, Wyo., 592 P.2d 1130 (1979); *Jones v. State*, Wyo., 602 P.2d 378 (1979); *Buck v. State*, Wyo., 603 P.2d 878 (1979); *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979); *Kenney v. State*, Wyo., 605 P.2d 811 (1980); *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981); *Daniel v. State*, Wyo., 644 P.2d 172 (1982); *Taylor v. State*, Wyo., 658 P.2d 1297 (1983); and *Eaton v. State*, Wyo., 660 P.2d 803 (1983).

In *Scheikofsky v. State*, supra, 636 P.2d 1107 at 1112–1113, we said:

"This court has stated its approach to sentence review many times. If a trial court's determination of the terms of imprisonment is within the statutory limits, it will not be disturbed absent a clear abuse of discretion. *Hanson v. State*, Wyo., 590 P.2d 832, 835 (1979); *Jones v. State*, Wyo., 602 P.2d 378, 380 (1979);

*Smith v. State*, Wyo., 564 P.2d 1194, 1202 (1977); *Daellenbach v. State*, supra, at 683 [562 P.2d 679 (1977)]. A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *Hicklin v. State*, Wyo., 535 P.2d 743, 751, 79 A.L.R.3d 1050 (1975). That is a nebulous standard, but it is as precise as we care to make it. We have an abiding reluctance to review a trial judge's determination of sentence. The determination is a burdensome decision which no trial judge could lightly make and which we will not lightly overturn."

In defining an abuse of discretion, we have said that:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * * " *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

The search for "reasonableness" and the recognition of the "circumstances" involved are complex with reference to sentence imposition. It is generally recognized that sentence imposition involves consideration of two broad categories: (1) the crime and its circumstances, and (2) the character of the criminal.[2]

The differences in severity of punishment allocated by the legislature to the several crimes reflect a recognition that some crimes are more serious than others. Crimes of violence may properly carry a

---

**2.** Re philosophy of sentencing see e.g. Burns and Mattina, *Sentencing*, The National Judicial College (1978); Campbell, *Law of Sentencing*, The Lawyers Co-operative Publishing Co. (1978); Killinger and Cromwell, *Corrections* *and Administration*, West Publishing Co. (1976); Rich, Sutton, Clear and Saks, *Sentencing by Mathematics*, The National Center for State Courts (1982).

heavier sentence than non-violent crimes. The circumstances surrounding the commission of a crime can likewise effect the amount of sentence, e.g. John Doe and Richard Roe were both convicted of the same crime. Both broke a window and took merchandise from a business establishment without permission. John Doe took bottles of intoxicants for his own consumption. Richard Roe took a loaf of bread for his hungry child. Richard Roe's sentence could reasonably be less than that of John Doe.[3]

The character of the criminal could reasonably increase or decrease his sentence. His family background, education, intelligence, employment history, age, training, criminal and delinquency record, attitude, etc., well bear upon the accomplishment of the purpose of the sentence.

■ And the purpose of the sentence enters into the application of both of the two broad categories considered in imposing a sentence. Although sometimes denominated otherwise, it is generally recognized that a sentence is imposed for *one or more* of four purposes: (1) rehabilitation, (2) punishment (specific deterrence and retribution), (3) example to others (general deterrence), and (4) removal from society (incapacitation or protection of the public). Rehabilitation is a laudable purpose, but there has been considerable disillusionment with it in the last ten to fifteen years. Nonetheless, methods by which a cancer to society can be turned into a societal asset are always desirable. Sometimes punishment results in rehabilitation. Sometimes it is a deterrent. Sometimes it is retribution only. The purpose of a sentence as an example to others is often overlooked. A person in a prominent position who is convicted of embezzlement may not need rehabilitation or additional education. The notoriety of his conviction may be more than adequate punishment, and removal from society would serve no use. But if a prison sentence were not imposed, another person in a similar prominent position could well believe it

worth a chance to attempt a similar embezzlement—probation being the probable sentence should his attempt fail. Removal from society may be necessary to prevent continued criminal action by an individual. There are some who will hurt others at every favorable opportunity unless they are in confinement. These four sentencing purposes are in accord with Art. 1, § 15, Wyoming Constitution: "The penal code shall be framed on the humane principles of reformation and prevention." Rehabilitation results in reformation. Punishment results in both reformation and prevention. Example to others results in prevention. And removal from society also results in prevention.

A sentencing judge is also aware of the vital effect on the life of one convicted which results from his forced confinement—sometimes for a major span of such life. Likewise, he is apprehensive about having on his conscience the rape, assault or death of an innocent person at the hands of a convicted person who was not sentenced to confinement for an adequate time. The judge must isolate himself from (1) the "sob-sister" type who pressures for leniency on the basis of the convicted person's humanity without consideration of the injured victims and other pertinent factors, and (2) the vengeful "blood-at-any-cost" type who pressures for "hanging" without consideration of the human nature of the convicted one and the circumstances surrounding him and the crime itself.

The purpose of the foregoing brief summary of some of the factors and philosophy involved in sentencing is to illustrate the complexity of the act of sentencing and, thus, of that which is pertinent to a determination of whether or not discretion was abused in the imposition of a given sentence. Turning then to the specifics of the issue here presented on appeal in light of such factors, we do not find an abuse of discretion.

---

**3.** This example exposes the fallacy of the proposition that those convicted of the same crime should receive proportionately equal sentences.

## DUE CONSIDERATION TO PETITION FOR PROBATION

■ When probation is an alternative to incarceration, the sentencing judge *must* consider it. *Daniel v. State,* supra; *Jones v. State,* supra; *Kenney v. State,* supra; *Taylor v. State,* supra; *Eaton v. State,* supra. " * * * The only right which an applicant for probation possesses is that his petition should be considered by the court. * * * " *Sanchez v. State,* supra, 592 P.2d at 1137.

We also commented that it would be helpful if the reasons for granting or denying probation were noted by the sentencing judge.

"We strongly recommend that the trial judges explain their reasons for denying probation and indicate the factors they considered in imposing sentence." *Daniel v. State,* supra, 644 P.2d at 180.

■ In this case, a presentence investigation was conducted and the report was made to the judge. At the start of the sentencing proceedings, the court inquired:

" * * * Counsel are aware of the presentence investigation summary which has been submitted through the Probation and Parole Department. Do each of you have a copy? "

Appellant's counsel acknowledged receipt of the copy and noted a few minor mistakes in it, i.e. appellant moved to Sheridan (not Sundance) when he was in the eighth (not third) grade, and his mother's first name is "Emile" not "Emmile." Appellant's counsel made a detailed plea to the court for probation, referring a number of times to the presentence report. The prosecuting attorney argued to the court that a sentence of

incarceration be imposed, calling attention to the seriousness of the crime.

Before imposing sentence, the court said to appellant:

"Well, Mr. Wright, the Court is impressed with your background and I'm very encouraged with the fact that you are doing well in school and we will take that of course into consideration. The crime of which you stand convicted is a very serious one even though it was for the delivery of a small amount. It was nonetheless a delivery and therefore under our statutes a felony. Considering all the factors in the case, the Court determines that you are not a fit subject for probation, but that because of all the circumstances, a minimum sentence is going to be imposed and that will be a period from two to four years in the Wyoming State Penitentiary. * * * "

The court also specifically called appellant's attention to his "right to petition the Court for a sentence reduction within 120 days." [4]

The sentencing court obviously *did* give consideration to the request for probation.

" * * * The fact that probation was requested and the appearance of a probation plan in the pre-sentence report can lead to no conclusion but that the court could not avoid giving it consideration. * * * " *Beaulieu v. State,* Wyo., 608 P.2d 275 (1980).

The judge and counsel talked about probation, reference was made to the presentence report which contained a recommendation of probation, and the court specifically advised appellant that, in the court's opinion, "you are not a fit subject for probation" in consideration of "all the factors in the

4. Rule 36, W.R.Cr.P., provides:

"The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce the sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court having the effect of upholding the judgment of conviction.

The court may also reduce a sentence upon revocation of a probation as provided by law."

Although we are aware of the fact that some trial judges have changed a rather severe penitentiary sentence to probation within the 120-day period, having in mind that a 15- or 30-day exposure to penitentiary life by the defendant would be the most beneficial way to "shock" him from engaging in future criminal activity, we do not here comment upon the propriety of such action one way or the other.

case." Under the circumstances, we cannot say that the court created an error of law or acted in a manner exceeding the bounds of reason. Probation was considered. The severity of the crime and "all the factors" of the case were considered. There was no abuse of discretion in failure to give due consideration to the petition for probation.

### FAILURE TO SET FORTH REASONS FOR DENIAL OF PROBATION

■■■ As already noted, we "strongly recommend" explanation of the reasons for denial of probation, *Daniel v. State*, supra, 644 P.2d at 180, but we have not been presented with a situation in which the failure to provide such explanation amounted to an abuse of discretion. In this case the court did refer to the severity of the crime as a reason for denial, but it pointed to "all the factors in the case" as indicating appellant to not be a "fit subject for probation." All of the considerations outlined in the first part of this opinion were undoubtedly balanced with reference to the circumstances of this case by an experienced judge. He gave a reason for his sentence. He noted the potential for correction within 120 days. The record reflects the passage of sufficient time in which he could consider his options. It reflects the gathering of pertinent information.

The court did not fail to give reasons for not granting probation, and failure to do so is not, ipso facto, error.

### IGNORING RECOMMENDATION IN PRESENTENCE REPORT

■■■ There is nothing in the record to reflect that the court ignored the recommendation made by the probation agent in the presentence report.[5] The court obviously considered the report and all that was in it. Appellant's counsel called the court's attention to the fact that the report reflected that "incarceration would seem to be inappropriate in this particular action."

The court did not ignore the recommendation, it simply did not accept it. Nor is the court required to accept such recom-

mendations. It is the court's duty to impose sentence. It is not the duty of a probation agent to do so. To require the court to accept the recommendation of a probation agent as a matter of law would transfer the sentencing duty from the court to the probation agent. Discretion was not abused through failure of the court to accept the recommendation for sentence made by a probation agent.

### AGGRAVATING CIRCUMSTANCES TO SUPPORT SENTENCE

■■■ The contention that there need be aggravating circumstances to support a sentence of confinement and the circumstances of aggravation in this case are sufficiently explored in the first part of this opinion and in the section relative to "Failure to set forth reasons for denial of probation." That said there makes it unnecessary to further comment on the contention that the record relative to aggravating circumstances reflects an abuse of discretion by the court in imposing a sentence of confinement.

### ARBITRARY AND CAPRICIOUS NATURE OF SENTENCE

■■■ Again that already here said refutes the contention that failure to grant probation to appellant was an arbitrary and capricious action on the part of the trial court. In his brief, appellant argues that the court said appellant's sentence would not be as great if he pled guilty as it would be if he were found guilty after trial. We have diligently searched the record and find nothing said by the court to support that argument. Accordingly, we do not address the issue.

### COMMENT ON DISSENTING OPINIONS

In an effort to give succor to a criminal, both dissenting opinions accept the statement of the convicted person as to the facts of the criminal incident. They refuse to recognize that a jury did not believe his story and found that he lied when he con-

---

**5.** The probation agent recommended that "Defendant be given probation in this matter."

tended that he was entrapped, and that he lied when he said that he did not institute the conversation and transaction for sale of the "drugs" by him. Rather, the jury believed the contrary evidence and convicted him of the crime.

The dissenting opinions quote from the criminal's testimony and disregard the jury's conclusion that such testimony was false.

We have repeatedly said that:

"On appeal, when presented with a challenge to the trier of fact's findings, we are required to accept the evidence of the prevailing party—in this instance the prosecution—as true, and leave out of consideration entirely the evidence of the appellant in conflict therewith. * * *" *Browder v. State,* Wyo., 639 P.2d 889, 891 (1982).

" * * * and giving to the State those inferences which may be reasonably and fairly drawn from it. * * * " *Tillett v. State,* Wyo., 637 P.2d 261, 263 (1981).

See *McCarty v. State,* Wyo., 616 P.2d 782, 786 (1980); *Leppek v. State,* Wyo., 636 P.2d 1117, 1119 (1981); *Mainville v. State,* Wyo., 607 P.2d 339, 341 (1980); *Padilla v. State,* Wyo., 601 P.2d 189, 191 (1979); *Reinholt v. State,* Wyo., 601 P.2d 1311, 1312 (1979) and many others.

In this instance, the dissenting opinions do the opposite and accept the testimony concerning the circumstances surrounding the commission of the crime, as related by the criminal, as true and disregard the testimony to the contrary. Witness Young testified about a conversation with David Jones, a friend of appellant. He was then asked:

"Q. During the course of this conversation did Mr. Wright, the defendant, enter into the conversation at all?

"A. He did.

"Q. What was the subject that Mr. Wright brought up?

"A. Mr. Wright brought up the subject of offering to sell me some marijuana.

"Q. Had you at any time asked Mr. Wright for some marijuana?

"A. I did not."

Witness Miller testified:

"Q. As between Agent Young and Mr. Wright, who was the individual that first brought up purchasing marijuana?

"A. Mr. Wright.

"Q. Did Agent Young at that time ask to purchase marijuana from Mr. Wright?

"A. No, he didn't."

Appellant does not deny the sale of marijuana to Young. The jury found appellant guilty of the crime as charged.

It is true that the sentencing considerations can be much broader than those concerning guilt. But if we question the discretion of the trial court for refusing to accept the jury findings, we are straying far from the definition of abuse of discretion (see supra); and if we are encroaching on the proposition whereby we disregard the evidence of the appellant and consider only that of the appellee when a challenge is made on appeal to actions predicated upon findings by the trier of facts, we are throwing appellate fundamentals into disarray.

The dissenting opinion of Justice Cardine recognizes that the evidence was such that the jury could find appellant guilty, but then it concludes that he "was not a dealer in drugs nor engaged in the business." The crime committed by appellant had nothing to do with "dealing" in drugs or "engaged in the business" of drugs—*although appellant obviously was found to have done both.* He acknowledged that he made a sale. He was charged with, and the jury found him guilty of violation of § 35–7–1031(a)(ii), W.S.1977, in that he "did unlawfully deliver" a controlled substance. "Deliver" is defined in § 35–7–1002(a)(vi), W.S.1977, as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Of course these are questions of fact,* and the jury found them to be against appellant.

The dissenting opinion of Justice Rose ranges far and wide in contending that the criminal should not receive a penitentiary sentence—all founded on (1) the false prem-

ises that he was entrapped,[6] (2) that he did not initiate the sales transaction, and (3) that the criminal was "not in the drug business" and had not "in any way been associated with drugs." The jury verdict dictates just the opposite. Contrary to that said in Justice Rose's dissenting opinion, he did possess the drugs long before he made the sale. He acknowledged that he kept them in his automobile, i.e. in his possession. The extensive dicta in Justice Rose's opinion need not be of concern at this time. I will note, however, that I consider the words "necessary and proper to the complete exercise of its appellate and revisory jurisdiction" in Art. 5, § 3 of the Wyoming Constitution to pertain to that which they modify, i.e. to "other writs," and not to pertain to the writs specified in the section (including certiorari).

Affirmed.

THOMAS, Justice, specially concurring.

I concur in the result which is reached by the majority in this case. I find, however, that my perception of the situation in the State of Wyoming with respect to review of sentencing is different from that set forth in the majority opinion. In my view we are confronted by a situation in which we are compelled to look more closely at what we have done than what we have said. Scrutinized from that perspective, it is quite clear to me that this court as a matter of practice follows the common-law rule with respect to sentence review. The practical effect of our decisions is that a sentence is not subject to appellate review if it is within the limits set by the legislature.

It cannot be denied that the court has articulated the clear abuse of discretion ex-

ception to the rule that this court will not interfere with the discretion of the trial court in sentencing. This court said in *State v. Sorrentino,* 36 Wyo. 11, 253 P. 14, 16 (1927), that:

"* * * While this court may have the power to reduce the sentence—a point which we need not decide—we think that the district court was better qualified to judge of the proper punishment to be meted out. We ought not, except in a clear case, to interfere with the discretion of the trial court in that regard. But, lest the decision on this point might hereafter be misconstrued, we think we should add that we should not want it to be used in prejudice of the appellant, should he, at any time, deem fit to appeal to executive clemency, for, as stated before, the case is one peculiar in its facts, and we can readily see that different men might come to different conclusions as to what punishment should be meted out. We simply decide that, sitting as an appellate court, the discretion vested in the trial court has not been so clearly abused as to authorize us to interfere."

This same proposition has been alluded to in a number of cases: *Eaton v. State,* Wyo., 660 P.2d 803 (1983); *Taylor v. State,* Wyo., 658 P.2d 1297 (1983); *Daniel v. State,* Wyo., 644 P.2d 172 (1982); *Cyrus v. State,* Wyo., 639 P.2d 900 (1982); *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981); *Jones v. State,* Wyo., 602 P.2d 378 (1979); *Smith v. State,* Wyo., 564 P.2d 1194 (1977); *Daellenbach v. State,* Wyo., 562 P.2d 679 (1977); *Cavanagh v. State,* Wyo., 505 P.2d 311 (1973); and *Bird v. State,* 36 Wyo. 532, 257 P. 2 (1927).

When we consider the definition of an abuse of discretion quoted in the majority

---

**6.** After quoting from his dissent in *Janski v. State,* Wyo., 538 P.2d 271, 282 (1975), relative to condemnation of law enforcement officers who " 'encourage and assist parties to commit crime,' " and whose function " 'does not include the manufacturing of crime,' " and after setting out a list for entrapment, Justice Rose says in his dissenting opinion:

"Apparently the jury believed that Wright was predisposed to commit the crime even if the agents initiated the solicitation of marijuana. Considering the evidence in the light

most favorable to the prosecution, I therefore would concede that the jury's failure to find entrapment in this case does not amount to plain error even though that issue weighs guilt-ridden and delicately balanced upon the scales of justice."

Later he states that the criminal "was duped by agents employed by the State of Wyoming" and notes that he uses "the verb 'duped' advisedly" and that it "means 'deceived' or 'cheated.' " See n. 3 to Justice Rose's dissenting opinion.

opinion from *Martinez v. State,* Wyo., 611 P.2d 831 (1980), we must recognize that a sentence within the limits set by the legislature cannot be considered an "error of law committed by the court under the circumstances." Consequently there could not be an abuse of discretion. The rule which this court has followed is perhaps more clearly enunciated in *Apodaca v. State,* Wyo., 571 P.2d 603, 605 (1977), in which the court said:

> "The sentence imposed herein is clearly within the statutory limits as set by the legislature, 20 years being the minimum penalty therefor. It being within such limits, the determination of this penalty was exclusively with the trial judge. * *."

Similar holdings were encompassed in *Hicklin v. State,* Wyo., 535 P.2d 743, 79 A.L.R.3d 1050 (1975), and *Bentley v. State,* Wyo., 502 P.2d 203 (1972). This rule does seem to closely match that rule articulated by the Supreme Court of the United States in the following language:

> "If there is one rule in federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." *Dorszynski v. United States,* 418 U.S. 424, 440–441, 94 S.Ct. 3042 [3051], 41 L.Ed.2d 855 (1974), quoting from *Gurera v. United States,* 40 F.2d 338, 340–341 (8th Cir.1930).

Justice Rose, in his dissenting opinion in *Scheikofsky v. State,* supra, stated that in his view this court had adopted a policy of non-review with respect to sentencing. In substance this does amount to the common-law rule.

I concur in the result in this case because I am comfortable with the common-law rule. I am not comfortable with a rule which would make every sentence imposed by a trial court a matter subject to review by this court. In the absence of the experience with the accused which the trial court has, the only way the appellate court can achieve a meaningful adjustment of sentences is to do it on the basis of some sort of mathematical averaging. In my judgment, such a statistical approach to the concept of sentencing ultimately would rob the district court of any discretion whatsoever with respect to sentencing.

We would be adjusting sentences based upon a cold record without even knowing what the defendant looked like. I do not think that it is possible to experience another individual through a file of papers which is identified by his name, but which under the circumstances has no greater significance than the case number attached to the file. Consequently, if it is necessary for our society to impose sentences upon individuals it must be done by the trial judge who sees the person, comes to know him through his court appearances and participation in the trial, has an opportunity to assess his credibility, can appraise his degree of remorse, and deals with him on a personal basis as a representative of an unfortunate group in our society who must from time to time encounter the consequences of violating society's rules. I would feel extremely uncomfortable trying to adjust that sentence, one of the more significant events in the life of a living and breathing individual, without ever having seen that person.

I have not, however, completed the statement of my position. We also must recognize some exceptional instances in which it would be appropriate for this court to examine the sentence imposed by a district judge in the exercise of our discretion. We recently have reviewed other cases pursuant to a petition for a writ of certiorari. The granting of the writ is entirely within the discretion of this court. If a petition for a writ of certiorari should be applied for in the interests of Grant Alan Wright I would vote to grant that petition. In my view this court in that context could perhaps identify standards pursuant to which an abuse of discretion might be found other than the definition set forth in the Martinez case. In 4 A.B.A. Standards for Criminal Justice, 20–1.2 (1980), for example, the American Bar Association has suggested the following as objectives of appellate review of sentences:

> "(a) To correct the sentence which is excessive in length, having regard for the

nature of the offense, the character of the offender, and the protection of the public interest;

"(b) To promote respect for law by correcting abuses of sentencing power and by increasing the fairness of the sentencing process;

"(c) To facilitate the possible rehabilitation of an offender by reducing manifest and unwarranted inequalities among sentences of comparable offenders; and

"(d) To promote the development in application of criteria for sentencing which are both rational and just."

While undoubtedly other standards might well be suggested to the court, standards such as this would be appropriate in determining in the exceptional case whether an abuse of sentencing discretion had occurred.

It does appear that New Hampshire and Wisconsin have held that in those jurisdictions the appellate court has the power to review sentences under its supervisory jurisdiction with respect to trial courts. *State v. Fortes,* 114 R.I. 161, 330 A.2d 404 (1975); *State v. Johnson,* 67 N.J.Super. 414, 170 A.2d 830 (1961); and *State v. Tuttle,* 21 Wis.2d 147, 124 N.W.2d 9 (1963). This approach is at least analogous to that found in the language of Art. 5, § 2 of the Constitution of the State of Wyoming which states:

"The supreme court shall have general appellate jurisdiction, co-extensive with the state, in both civil and criminal causes, and shall have a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law."

In summary, while I accept as workable and appropriate in the vast majority of criminal cases the common-law rule with respect to sentence review, I recognize the potential for an exceptional case in which the sentence imposed by the trial judge shocks the conscience of the appellate court. I am willing to consider those cases pursuant to a petition for a writ of certiorari, the granting of which is discretionary with this court. The invocation of the writ of certiorari is appropriate in such an instance because as this court has developed its posi-

tion with respect to sentence review the defendant clearly has no appeal from the sentence imposed by the trial court.

ROSE, Justice, dissenting.

Is there, perhaps, some secluded place in
the affairs of law enforcement, where,
during the thrill of the chase
(when the prospects of the kill seem to
overwhelm all other
and gentler instincts),
the fever of the manhunt
will momentarily subside
in favor
of one human being love and respect
for his or her fellow man or woman?

Is there not some secret place
in the heart of the hunter where
even the law does not visit—
a place where, during a fleeting pause, a
voice will say,
"It is not good to stalk any further"—
where it will say,
"This is not the quary I seek"—
where it will say,
"My obligation of love
of my fellow human being
denies to me the right
of further pursuit"?

Is there not a place like that—
Is there not a voice like that—
Anywhere?

I join in the dissenting opinion of my brother Cardine, and add these dissenting thoughts of my own.

THE ABUSE–OF–DISCRETION ISSUE

"The current sentencing statutes in Wyoming vest broad discretionary authority in the district court judges, without substantial guidance or review from either the legislature or the Wyoming Supreme Court. A system which is charged with such consequential decision-making power, yet burdened with so little formal structure, produces inequitable treatment almost by design." Roberts, *The Changing Structure of Criminal Sentencing,* 18

Land and Water Law Review 591, 637 (1983).

In this case, at the trial-court level, the district judge sentenced Grant Alan Wright to the state penitentiary for from two to four years, with these remarks:

"Well, Mr. Wright, the Court is impressed with your background and I'm very encouraged with the fact that you are doing well in school and we will take that of course into consideration. The crime of which you stand convicted is a very serious one even though it was for the delivery of a small amount. It was nonetheless a delivery and therefore under our statutes a felony. Considering all the factors in the case, the Court determines that you are not a fit subject for probation, but that because of all the circumstances, a minimum sentence is going to be imposed and that will be a period from two to four years in the Wyoming State Penitentiary."

The presentence summary which was presented to the district judge by the department of probation and parole said:

"The Defendant [Wright] is a twenty year old male in sound physical and mental health. He comes from a very solid and close family background.

"He exhibits no serious drug or alcohol problem and appears to have used these substances sparingly. The Defendant denies selling drugs with the exception of the present offense, which appears to have some extenuating circumstances.

"The Subject has maintained regular employment and is currently furthering his education at Sheridan College, where he hopes to graduate from the welding program in 1983. He is an excellent student.

"The Defendant has presented no problems with his family nor the community at large. His prior offenses are relatively minor and demonstrate no criminal inclinations. This is his first felony conviction."

The presentence investigation went on to conclude:

"The Defendant appears to be a good risk for probation. *Incarceration for this De-fendant does not appear to be the appropriate route.*" (Emphasis added.)

As I have noted above, in the sentencing hearing, the trial court said he considered "all the factors in this case" and, without saying what they were, found that Grant Wright was "not a fit subject for probation."

In *Sanchez v. State*, Wyo., 592 P.2d 1130 (1979), we directed that the American Bar Association Standards for Criminal Justice, Probation, be given consideration where probation is contemplated as an alternative to incarceration. We also said that in non-capital cases and in those cases where the sentence was not life imprisonment,

" * * * the only right which an applicant for probation possesses is that his petition should be considered by the court." 592 P.2d at 1137.

In *Daniel v. State*, Wyo., 644 P.2d 172, 180 (1982), we said:

"We strongly recommend that the trial judges explain their reasons for denying probation and indicate the factors they considered in imposing sentence."

While it might be argued that the trial judge, in the matter at bar, considered probation in compliance with Sanchez, he did not make known the factors which led him to refuse probation as required by Daniel. This leaves this court in a position where—even if it were conceded that we have retained the authority to examine the exercise of the trial court's discretion—we would not have available to our inquiry a record of the factors which led to the judge's denial of probation. This leaves us with a very meager record upon which to exercise our appellate obligation of review.

In *Daniel v. State*, supra, we quoted Justice Roberts of the Pennsylvania Supreme Court, when, in *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140, 147 (1977), he wrote about the reason for requiring a record of purposes and factors in the sentencing process, and I would reiterate here that Justice Roberts' reasons and the rule of Sanchez should be sufficient to cause all trial judges to furnish the record with this

information. It was not done here, however, and therefore we are at a loss to know why, when the defendant's record was so clean and the probation report so affirmative, the trial judge sentenced Grant Wright to prison instead of placing him on probation.

This case was bound, one day, to come to haunt and threaten this court's bizarre policy of *saying* that we retain the right to review the criminal sentence for abuse of discretion even though within statutory parameters, while we *in fact* refuse to interfere with a district court's sentence no matter what kind of unbelievable abuse of sentencing discretion has been exercised.

Here we have a young man, *20* years old, with an exemplary home, school and societal record. He works hard at his job, is an honor student at Sheridan College, and his only prior violations of law are a speeding ticket and running a red light. He was charged and found guilty of an unlawful delivery of a controlled substance, marijuana, in violation of § 35–7–1031(a)(ii), W.S. 1977.

> This statute provides in relevant part: "(a) Except as authorized by this act [§§ 35–7–1001 to 35–7–1055], it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

> \*   \*   \*   \*   \*   \*

> "(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00) or both \* \* \*."

The circumstances which surround Grant Wright's apprehension and sentence to prison for two to four years are frightening. Justice Cardine, in his dissenting opinion, has described the transaction which led to Mr. Wright's arrest, and I have little to add except to say that there is, when the State is given the benefit of all doubt, barely enough evidence to sustain a verdict of guilty when the evidence most favorable to the State is pitted against the defense of entrapment.

During their trip to Story—when all four were in the car: Wright, Jones and the two undercover agents—the officers were the ones who introduced the subject of drugs into the conversation. They then testified that they were addressing their particular inquiry to Wright's companion, Jones, when Wright mentioned "during the conversation [with Jones]" that he had some marijuana in his car at Story, that it was his own and that he would *"give"* (emphasis added) the undercover agent half of it. The agent took Wright home to Story, and, in gratitude for the ride, Wright handed the officer a small quantity of marijuana. He had not originally intended to deliver or sell it. It was his purpose to just give it to someone who had been kind to him. It was the agent who brought up the issue of money and then handed Wright $20.00.

Wright was not a marijuana dealer and was not even possessed of marijuana until the undercover agents talked him into going to Story to get some out of his car that night. He was not in the drug business, was not on the officer's target list, and the officer's subsequent investigation did not reveal that he had in any way been associated with drugs. In *Janski v. State*, Wyo., 538 P.2d 271, (1975), I said in my dissent at p. 282:

> "This court has worried in other cases about criminal prosecutions that have been laid out by the police. Justice McClintock spoke for the court in *LaFleur v. The State of Wyoming*, Wyo., 533 P.2d 309, 312–313, decided April 1, 1975, when he said:

> > " 'Condemnation of prosecution of crimes which have been arranged by law enforcement officers is of long standing. Thus, in *Saunders v. People*, 38 Mich. 218, 222 (1878) Mr. Justice Marston said in his concurring opinion that courts " \* \* \* have not yet gone so far, and I trust never will, as to lend aid or encouragement to officers who

may, under a mistaken sense of duty, encourage and assist parties to commit crime, in order that they may arrest and have them punished for so doing." " 'The cited federal decisions are equally strong in their condemnation of manufacturing cases, the summation on that appearing in *United States v. Russell,* supra note 8, 411 U.S. [423] at 434, 93 S.Ct. [1637] at 1644, [36 L.Ed.2d 366] where Mr. Justice Rehnquist, speaking for the majority, states:

" ' " * * * We are content to leave the matter where it was left by the Court in Sherman [cited infra]: 'The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime.' " ' "

The two-pronged test for entrapment was set out by the United States Supreme Court in *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), according to which the jury is directed to consider: (1) the conduct of the agent—i.e., whether the crime was the result of creative activity of the police; and (2) the conduct and predisposition of the accused to commit the crime.

Apparently the jury believed that Wright was predisposed to commit the crime even if the agents initiated the solicitation of marijuana. Considering the evidence in the light most favorable to the prosecution, I therefore would concede that the jury's failure to find entrapment in this case does not amount to plain error even though that issue weighs guilt-ridden and delicately balanced upon the scales of justice.

But it is not—in this appeal—the trial and its outcome that troubles me. The damage that was done in that phase of the proceeding is beyond repair. I am concerned here about the sentencing of this young man to the Wyoming state penitentiary for two to four years for a mistake which, it could be argued, was induced by the State's agents. I recoil in revulsion when I think what this experience is likely to do to his life. Only the most naive would pretend to be unaware of the cruel and evil things that befall young men when they are forced into penitentiary life and, no matter what scarring experiences await Grant Wright in the penitentiary, it will also be his lot to carry, throughout his life, the stigma of ex-convict.

The unjust result that has been reached in this litigation comes about as a result of this court's abdication of its appellate obligations in the sentencing arena.

The majority take the position that we have retained authority to review sentencing discretion even when the sentence falls within the limitations set by statute. Justice Thomas says that as a matter of law we have abandoned the authority to examine the trial court's sentencing discretion. *Apodaca v. State,* Wyo., 571 P.2d 603, 605 (1977). I hold that we have retained the authority—*as a legal proposition*—but have abandoned this authority *as a factual proposition.*

It was one thing for this court to—in point of fact—forsake our statutory obligation to review sentencing discretion when exercised within the parameters of the statute when Alvah R. Daniel, Jr. was before the courts. (See *Daniel v. State,* supra, 644 P.2d 172.) Daniel killed a woman, was charged with first degree murder, found guilty of involuntary manslaughter, and sentenced to from 19 to 20 years in the state penitentiary.

It is different than the situation with which we were confronted when we again said we retained but, in a factual sense, abdicated our appellate review prerogatives when we considered the sentencing complaints of Sharron Scheikofsky (*Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981)). Ms. Scheikofsky was charged with second degree murder of her husband and found guilty of manslaughter. She was sentenced to 10 to 15 years in prison.

Grant Wright's problem is different than the problem that confronted this court when we refused to disturb the sentence in *Jones v. State,* Wyo., 602 P.2d 378 (1979), where the defendant was charged, tried and found guilty of arson. He had a previous

record of convictions for assault with intent to kill and auto theft.

Grant Wright is not like Daellenbach, in *Daellenbach v. State,* Wyo., 562 P.2d 679 (1977), where, after conviction for armed robbery, the question of our interfering with the sentencing judge's discretion was again at hand.

This case is not like *Smith v. State,* Wyo., 564 P.2d 1194 (1977), where Smith was found guilty of second degree murder and complained that the sentence was too harsh and constituted an abuse of discretion. We said we would not disturb the trial judge's sentence so long as it was within the statutory sentencing parameters.

Grant Wright's case is to be distinguished from those set out above for many reasons, one of which is that these prior cases involved crimes of violence, while the crime with which Wright was charged is not. In many of the appeals mentioned, and other similar cases decided by this court, there was a background of criminality or alcoholism or other good and sufficient reasons why the defendant did not appear—at least to the sentencing judge—to be a good candidate for probation. In these circumstances, this court adopted the position that we would not interfere with the sentencing judge's exercise of discretion so long as the sentence was within the statutory parameters and probation had been considered,[1] even though we said we had retained the authority to exercise the prerogative of reviewing the possibility of abuse of discretion in the sentencing arena.

## THIS COURT'S HISTORICAL POSITION ON SENTENCE REVIEW

There is much to be said for Justice Thomas' position when, in his specially concurring opinion, he says that, even though we have articulated the abuse-of-discretion exception to the trial judge's sentencing authority, we have really adopted the common-law rule which holds that there cannot be an abuse of discretion so long as the term of sentence falls within the confines of the statute.

Justice Thomas points to our expression of this concept in *Apodaca v. State,* supra, 571 P.2d at 605, where we said:

"The sentence imposed herein is clearly within the statutory limits as set by the legislature, 20 years being the minimum penalty therefor. It being within such limits, the determination of this penalty was exclusively with the trial judge * * *."[2]

On the other hand, the majority say that we have *not* adopted the common-law rule and that we have historically said that we would modify the sentence where we found abuse of discretion even though the sentence was within the maximum or minimum directed by the penalty statute, citing *Eaton v. State,* Wyo., 660 P.2d 803 (1983); *Taylor v. State,* Wyo., 658 P.2d 1297 (1983); *Daniel v. State,* supra; *Scheikofsky v. State,* supra; *Kenney v. State,* Wyo., 605 P.2d 811 (1980); *Sorenson v. State,* Wyo., 604 P.2d 1031 (1979); *Buck v. State,* Wyo., 603 P.2d 878 (1979); *Jones v. State,* supra; *Sanchez v. State,* supra; *Peterson v. State,* Wyo., 586 P.2d 144 (1978); and *Cavanagh v. State,* Wyo., 505 P.2d 311 (1973).

I have in the past taken the position expressed by the majority while urging that we adopt standards which would, in their implementation, aid in deciding when a district court judge had or had not abused his or her discretion.

In *Scheikofsky v. State,* supra, 636 P.2d at 1116, in an opinion concurring in part and dissenting in part, I recognized the inconsistency in adopting the rule embraced by the majority in this appeal while actually not exercising the review of sentencing power that we professed to have and which we pretend to be utilizing. I said:

---

1. In *Sanchez v. State,* supra, 592 P.2d 1130, we reversed the trial court for the reason that the judge had refused to consider probation in the sentencing process and thus had abused his discretion.

2. See *Martinez v. State,* Wyo., 611 P.2d 831 (1980); *Hicklin v. State,* Wyo., 535 P.2d 743, 79 A.L.R.3d 1050 (1975); *Bentley v. State,* 502 P.2d 203 (1972).

" * * * There is no more delicate and crucial process in the criminal-justice system than the sentencing of individual offenders where life and freedom is in the balance. To be sure, sentencing is a function which is carried out carefully and cautiously by the trial judges of Wyoming, but it is, nevertheless, a function that should be subject to appellate scrutiny for abuse of discretion according to some test which is more specific than whether or not the particular sentence falls within the minimum and maximum sentencing parameters established by the legislature. This court carefully inquires into the trial process in order to insure that the constitutional rights of the accused are made available, but we then refuse to become involved in the most crucial aspect of the proceeding, namely, that part where the individual is subjected to a possible loss of liberty and even life."

I then advocated the standards for review as suggested by the Supreme Court of Alaska in *Ripley v. State,* Alaska, 590 P.2d 48, 52 (1979), where that court said:

" 'When a sentence is appealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did.' [*State v. Chaney,* Alaska, 477 P.2d 441, 443–444 (1970).]

"In implementing these provisions, the court has recognized the following goals of criminal sanctions: (1) rehabilitation of the convicted offender into a non-criminal member of society; (2) isolation of the offender from society to prevent criminal conduct during the period of confinement; (3) deterrence of the other members of the community who might have tendencies toward criminal conduct similar to those of the offender; (4) deterrence of the offender himself after release; (5) community condemnation of the individual offender, or in other words, the affirmation of societal norms for the purpose of maintaining respect for the norms themselves."

In my specially concurring opinion in *Daniel v. State,* supra, 644 P.2d at 188, I said:
"Today's trend in the law encourages appellate courts to take a more enlightened stance with regard to the sentencing of criminal offenders. Conceding that sentencing authority lies within the discretion of a trial court, this important aspect in the judicial process should not thereby be placed beyond the pale of appellate scrutiny. *State v. Messer,* Iowa, 306 N.W.2d 731 (1981); *State v. Jones,* La., 398 So.2d 1049 (1981); *People v. Watkins,* Colo. [200 Colo. 163], 613 P.2d 633 (1980); *State v. Dillon,* 100 Idaho 723, 604 P.2d 737 (1979). Sentencing inquiry and review should be guided by the reasonable standards adopted in *State v. Chaney,* Alaska, 477 P.2d 441, 443–44 (1970), which standards I set out in my concurring opinion in *Scheikofsky v. State,* supra."

I find fault with the position in which this court finds itself as exemplified by the condition of the law of sentencing review as it is now to be applied to the case at bar.

First off, I cannot agree with Justice Thomas, for whom the common-law rule is comfortable, and I certainly cannot agree with the majority's purported embracing of a sentencing procedure which says we will inquire into the trial court's exercise of judicial discretion and which then adopts standards of review but, in their application to the facts of this case, finds that the district court's sentencing of this young man to prison was not an abuse of discretion when tested against the adopted standards.

Even though *I* would not find it acceptable, it is one thing to say that this court will not disturb the sentence of those who have been convicted of rape, arson, murder and other violent crimes unless the sentence is beyond the boundaries of the statute. The effect of this appellate stance is to suggest to these types of convicted appellants, "You must take your chance with the discretion of the trial judge in the sentencing arena because he or she has seen you, observed you, has a feel for your credibility and your

trustworthiness or lack of it, where the appellate court, on the other hand, does not have these judgmental opportunities."

It is, however, another thing for an appellate court to reaffirm its abdication of its appellate obligation of sentencing review in a fact situation such as that presented by the case at bar. Here the trial court has sentenced to the penitentiary a 20-year-old boy—a college honor student—who, because of this one mistake of nonviolence in which he was duped[3] by agents employed by the State of Wyoming, must now spend a minimum of two years in the penitentiary with all of its frightening consequences.

### THE MAJORITY OPINION

Ironically, the majority, in coming to the conclusion that the trial judge *did not* abuse his discretion in sentencing Grant Wright to the Wyoming state penitentiary, seem to adopt substantially the standard concepts that I urged in Scheikofsky. This is done by referring us to the *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980), abuse-of-discretion definition, where we said:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances."

The majority go on to say:

**3.** I use the verb "duped" advisedly. Webster's New Collegiate Dictionary says that "duped" means "deceived" or "cheated." Rodale's Synonym Finder says of the verb "dupe":
  "Take advantage of the credulity of a person, make a dupe of, trick, cheat, hoodwink, delude, deceive, fool, befool, humbug, hoax, gull, bamboozle, beguile, outreach, overreach, outwit, take in, cully, cozen, chouse, circumvent, impose upon, make a fall guy of, victimize, mislead, defraud, swindle, play false, betray, steal a march on, put something over on, palm off on, throw dust in the eyes, bait, bilk, diddle, flimflam, best, gudgeon."

**4.** The authority cited is:

"The search for 'reasonableness' and the recognition of the 'circumstances' involved are complex with reference to sentence imposition. It is generally recognized that sentence imposition involves consideration of two broad categories: (1) the crime and its circumstances, and (2) the character of the criminal."[4]

Inexplicably inconsistent with its ultimate holding, the opinion proceeds with this observation:

"The character of the criminal could reasonably increase or decrease his sentence. His family background, education, intelligence, employment history, age, training, criminal and delinquency record, attitude, etc., well bear upon the accomplishment of the purpose of the sentence."

The majority seem to adopt these standards for sentencing:

"Although sometimes denominated otherwise, it is generally recognized that a sentence is imposed for *one or more* of four purposes: (1) rehabilitation, (2) punishment (specific deterrence and retribution), (3) example to others (general deterrence), and (4) removal from society (incapacitation or protection of the public).",

which are—as I have said—substantially those I suggested in *Scheikofsky*.[5]

The majority conclude the thought with the observation:

"These four sentencing purposes are in accord with Art. 1, § 15, Wyoming Constitution: 'The penal code shall be framed on the humane principles of reformation and prevention.'"

"Re philosophy of sentencing see e.g. Burns and Mattina, *Sentencing,* The National Judicial College (1978); Campbell, *Law of Sentencing,* The Lawyers Co-operative Publishing Co. (1978); Killinger and Cromwell, *Corrections and Administration,* West Publishing Co. (1976); Rich, Sutton, Clear and Saks, *Sentencing by Mathematics,* The National Center for State Courts (1982)."

**5.** Justice Thomas, in advocating the writ-of-certiorari approach to appellate sentence review would adopt the American Bar Association's suggested objectives of appellate review of sentences. See his specially concurring opinion, at p. 1098.

Turning, then, to the case at hand, the majority come to the conclusion that when we have taken the high purpose of the Constitution into account—"the humane principles of reformation and prevention"— and sprinkled this great concept with one or more of the sentencing purposes identified, we are unerringly led to the conclusion that this young man, given all the circumstances of his home, job, school and nonexistent criminal record—exemplary as his background is conceded to be [6]—is a proper candidate for a two to four year prison sentence or, at least, for the district judge to send him there is not an abuse of discretion.

And so what good does it do to say we retain appellate sentencing inquiry and to adopt standards which are flavored with constitutional protections, when these high-sounding concepts and purposes lead to such a result as is reached by the majority in Grant Wright's appeal?

I must say that even though I have had philosophical differences with my court on prior occasions (and who is to say who was right and who was wrong?), the dissention to the position of the majority that I am experiencing in the case at bar far and away surpasses any divergence of view that I have previously known. When I wrote about sentencing standards in Scheikofsky, I hardly expected to see their likes adopted in a case which would sanction imprisonment for a boy of Wright's age, family, school and social background, who had committed a first-time, nonviolent offense which, when placed upon the scale of criminal values, would tilt toward *"minimal."*

The thing that is so philosophically frightening is that judges—men of high purpose and good will—can be presented with the same facts, see the same problem, adopt the same standards, and come to such different results.

Can it be that my brothers feel that first-offender Wright must go to prison because:

1. He needs rehabilitation (when he has no drug problem and has never been in trouble before)?

2. He needs to be punished in order to accomplish "specific deterrence" (would not something less have been adequate?) and retribution? [7] (If payment in the form of punishment was necessary, could it not have been something less than the violent exposure of two to four years in prison?)

3. He must stand as an example to others? (Did his life have to be so viciously impacted in order to accomplish this purpose?)

4. He was such a miserable and dangerous influence that imprisonment was the only way that the public could be protected from his wiles and ways?

In application of the majority's standards to the life of this boy, are we holding that the trial judge did not abuse his sentencing discretion? Or—are we just pretending we retain the authority to make that decision— pretending we are adopting standards for its exercise—but, in reality, have adopted the common-law rule as suggested by Justice Thomas? What good purpose can the adoption of sentencing standards serve when they are utilized to underwrite the sentencing of the likes of Grant Wright to the Wyoming state penitentiary?

How can judges see things so differently? How can we be so far apart?

If this court is to utilize the standards adopted by the majority to approve the sending of Grant Wright to the penitentiary, then the standards are useless and we might just as well confess that we recognize no trial-court abuse of discretion in the sentencing process except in those situations where the sentence falls outside the

6.  See p. 1100 of this dissent for the language of the presentence summary which was submitted to the district judge by the probation and parole department.

7.  "Retribution" is defined in Black's Law Dictionary, 5th Ed., as follows:

"Something given or demanded in payment. In criminal law, it is punishment based on the theory which bears its name and based strictly on the fact that every crime demands payment in the form of punishment."

parameters established by the legislature. That is where Justice Thomas comes out and, for me, he is precariously close to being right if it comes about that the majority's application of the facts of this case to its suggested standards is to have the effect of paving Grant Alan Wright's way to prison.

In summary, I would say that the sentencing of Grant Wright to prison for two to four years was the first miscarriage of justice. The second is for this court to find no abuse of the trial court's discretion through a decision which announces that we have in fact retained appellate sentencing-review jurisdiction and which embraces sensible guidelines for its exercise but, in the utilization of our prerogatives and standards, we find this defendant's behavior to be so outrageous and unforgivable that he must go to prison.

If Grant Alan Wright is not the defendant to whose rescue this court should come, when and how can there ever be such a defendant?

### THE RULE 36, W.R.Cr.P. RELIEF

Appellant Wright was convicted of delivery of one-half ounce of marijuana in violation of § 35–7–1031(a)(ii), supra.

As has been noted, before imposing sentence, the court said to appellant:

"Well, Mr. Wright, the Court is impressed with your background and I'm very encouraged with the fact that you are doing well in school and we will take that of course into consideration. The crime of which you stand convicted is a very serious one even though it was for the delivery of a small amount. It was nonetheless a delivery and therefore under our statutes a felony. Considering all the factors in the case, the Court determines that you are not a fit subject for probation, but that because of all the circumstances, a minimum sentence is going to be imposed and that will be a period from two to four·years in the Wyoming State Penitentiary."

The majority opinion observes:

"The court also specifically called appellant's attention to his 'right to petition the Court for a sentence reduction within 120 days.' "

Rule 36, W.R.Cr.P., provides:

"The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce the sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court having the effect of upholding the judgment of conviction. The court may also reduce a sentence upon revocation of a probation as provided by law."

I do not know what the trial judge meant to say when he called the appellant's attention to his "right to petition the Court for a sentence reduction within 120 days."

Here is the full text of what he did say in that regard:

"I want to advise you of your right to appeal. Your counsel will tell you that you have to file a notice of appeal within ten days. You also have a right to petition the Court for a sentence reduction within 120 days from the time that you— either if you appeal within 120 days after the mandate comes down from the Supreme Court or if you choose to go immediately to the penitentiary for 120 days from the time of your initial incarceration and I'll ask that counsel consult Mr. Wright as to whether or not he wishes to appeal and if he does make sure that you take the necessary steps to perfect the appeal."

Are we to assume that the judge had sentenced Grant Wright to from two to four years in the state penitentiary just to scare him with the present intention that he would place him on probation once he had been incarcerated in Rawlins? The majority opinion indicates that

"[w]e are aware of the fact that some trial judges have changed a rather severe penitentiary sentence to probation within the 120-day period [contemplated by Rule 36] * * *."

I hasten to say that *I* was not aware of the practice. In this respect, I would observe that, without a specific provision in the rule for reduction of an incarceration sentence to probation, the district courts, in my judgment, lack jurisdiction to enter such an order.

Wyoming's Rule 36 tracks Rule 35 of the Federal Rules of Criminal Procedure in all but one respect. The federal rule was amended in 1979 to permit a court to reduce a sentence by changing a sentence of incarceration to a grant of probation. The reason this was done was because the United States Supreme Court, in *United States of America v. Murray,* 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1927), had held that, without the specific provision for reducing a sentence of incarceration to release on probation, the district court, under the Probation Act of March 4, 1925, was without jurisdiction to make such a reduction once the defendant had commenced to serve time.

In *United States v. Murray,* supra, 275 U.S. at 357–358, 48 S.Ct. at 149, Chief Justice Taft, writing for the Court, said:

"What was lacking in these provisions [of the Probation Act] was an amelioration of the sentence by delaying actual execution or providing a suspension so that the stigma might be withheld and an opportunity for reform and repentance be granted *before actual imprisonment should stain the life of the convict.* This amelioration had been largely furnished by a power which trial courts, many of them, had exercised to suspend sentences. In some sections of the country it had been practiced for three-quarters of a century. By the decision in *Ex parte United States,* 242 U.S. 27 [37 S.Ct. 72, 61 L.Ed. 129] that remedy was denied. In that case, however, this court suggested legislation to permit probation. For eight years thereafter Congress was peti-tioned to enact it, and finally the Probation Act was passed.

"The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment. Experience had shown that there was a real locus poenitentiae between the conviction and certainty of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. If the case was a proper one, great good could be done in stopping punishment by putting the new criminal on probation. The avoidance of imprisonment at time of sentence was therefore the period to which the advocates of a Probation Act always directed their urgency. *Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence. The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it. Ex parte Lange,* 18 Wall. 163. 21 L.ed. 872. Such a limit for probation is a natural one to achieve its end." (Emphasis added.)

The Court concluded:

"This Act has been before courts of first instance and circuit courts of appeals a number of times, but we have found only one reported case, in addition to the decisions by the district courts in the present cases, in which it has been held that probation may be granted after the service of the sentence has begun. That case is *United States v. Chafina,* 14 F.(2d) 622, a district court case. The other cases brought to our attention are not inconsistent with our ruling. *Nix v. James,* District Judge (C.C.A.9th) 7 F.(2d) 590; *Kriebel v. United States* (C.C.A.7th) 10 F.(2d) 762; *Evans v. District Judge* (C.C.A.6th) 12 F.(2d) 64; *Ackerson v. United States* (C.C.A.2d) 15 F.(2d) 268; *Davis v.*

*United States* (D.C.) 15 F.(2d) 697; *United States v. Young* (D.C.) 17 F.(2d) 129; *United States v. Davis* (D.C.) 19 F.(2d) 536." 275 U.S. at 358, 48 S.Ct. at 149–50.

Wright, Federal Practice and Procedure: Criminal 2d § 586, p. 405, in discussing Federal Rule 35, says:

" * * * As amended in 1979 [to add the sentence "Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision"] Rule 35(b) for the first time permits a court to reduce a sentence by changing a sentence of incarceration to a grant of probation."

The advisory committee Note comments as follows:

"Rule 35 is amended in order to make it clear that a judge may, in his discretion, reduce a sentence of incarceration to probation. *To the extent that this permits the judge to grant probation to a defendant who has already commenced service of a term of imprisonment, it represents a change in the law.* See *United States v. Murray,* 275 U.S. 347 [48 S.Ct. 146, 72 L.Ed. 309] (1928) (Probation Act construed not to give power to district court to grant probation to convict after beginning of service of sentence, even in the same term of court) * * *." (Emphasis added.)

Again, I say that I have no idea what the district judge's intentions were with respect to the utilization of Rule 36 of the Wyoming Rules of Criminal Procedure in Grant Wright's case. However, it is worthwhile calling the attention of all district courts to the difference between our Rule 36 and the Federal Rule 35. Our rule tracks the federal rule up to its last sentence. The federal case law, before the last sentence was added to the federal rule, was to the effect that, once the defendant had begun to serve his sentence, the district court lost jurisdiction to reduce the sentence to probation.

Therefore, as applied to this case, if it were to be the intention of the district judge to send the defendant to the state penitentiary to start serving his sentence in order to "shock"[8] him, with the further intention of, within the 120-day period contemplated by the rule, reducing the sentence to probation, I would think that, under *Murray v. United States,* supra, the district judge would be without such authority.

Who would complain? I would suspect that the Attorney General, the Governor and the state board of parole might have an interest in the matter.[9]

THE WRIT–OF–CERTIORARI ISSUE

"The writ of certiorari is a common-law writ, and under the power conferred * * by the Constitution * * * it must be held that the court has authority to issue it * * * *subject to the conditions and limitations controlling the writ at common law.*" (Emphasis added.) *City of Sheridan v. Cadle,* 24 Wyo. 293, 157 P. 892, 894–895 (1916).

Justice Thomas would review Grant Wright's sentence in response to a petition for a writ of certiorari. I do not believe that the sentence of the district court is reviewable by that method.

A consideration of the traditional role of the writ of certiorari compels the conclusion that the writ is not available for the purpose of reviewing the imposition of a sentence by the trial judge. As has been noted, in *City of Sheridan v. Cadle,* supra, this court recognized its authority to issue the writ of certiorari, subject, however, to "*the conditions and limitations controlling the writ at common law.*" (Emphasis added.) 157 P. at 895. The common-law writ of certiorari is a remedy narrow in scope in that it extends only to questions affecting the jurisdiction of the subordinate tribunal. *State ex rel. Nelson v. District Court of Fourth Judicial Dist.,* 107 Mont. 167, 81 P.2d 699 (1938). The writ is neither broad nor

8. See n. 4 of the majority opinion.

9. See the Governor and the state board of parole's petition for a writ of prohibition in *Her-*

*schler v. District Court,* No. 83–181, filed September 27, 1983 and our order in those proceedings dated October 6, 1983.

flexible, since the court is limited to quashing or refusing to quash action taken by a court in excess of or without jurisdiction. *State v. Davis,* Mo.App., 488 S.W.2d 305 (1972). The writ is not available to correct errors made in the exercise of valid, existing jurisdiction or to determine the merits of a controversy. *State v. Davis,* supra, 488 S.W.2d at 308. *Petition of Kelly,* 146 Mont. 484, 408 P.2d 478 (1965). *City of Sheridan v. Cadle,* supra, 157 P. at 895. It follows that the common-law writ of certiorari is not the appropriate means for correcting a sentence which, although within statutory limits, is harsh and unjust under the circumstances of the case.

In his special concurrence, Justice Thomas holds that a petition for a writ of certiorari is the appropriate means by which Grant Wright should seek review of his sentence, since it is his view—contrary to the position of the majority and contrary to the position which I hold—that appellate review is not available where the sentence falls within the statutory parameters and that therefore justice cannot be accomplished, given the extraordinary circumstances of this case.

I would hold that under the applicable rules which concern certiorari (and even though my deepest convictions say that Grant Wright should not go to prison) this court does not possess the authority to review the sentence by certiorari, since an exclusive, adequate and complete appellate-review procedure is available for that purpose, the utilization of which would not result in a failure of justice. *Call v. Town of Afton,* 73 Wyo. 271, 278 P.2d 270 (1954), discussed infra.

The power of this court to engage in appellate review and to issue writs of certiorari is conferred by Art. 5 of the Wyoming Constitution, the relevant sections of which provide:

"§ 2. Supreme court generally; appellate jurisdiction.

"The supreme court shall have general appellate jurisdiction, co-extensive with the state, in both civil and criminal causes, and shall have a general superintend-

ing control over all inferior courts, under such rules and regulations as may be prescribed by law."

"§ 3. Same; original jurisdiction.

"The supreme court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

Under Art. 5, § 3, the availability of all of the identified writs, including certiorari, is limited to situations where it is

"* * * *necessary and proper to the complete exercise of its appellate and revisory jurisdiction.*" (Emphasis added.)

In other words, a writ of certiorari should not issue unless that writ is necessary to aid the court in the exercise of its appellate and revisory jurisdiction. For me, it then follows that the writ is not intended to replace the appellate process where that process is in place—as it is when the district court's sentencing discretion is in issue. We have said the writ will not be granted where other adequate remedies are open to the petitioner, in *City of Sheridan v. Cadle,* supra, and *Call v. Town of Afton,* supra.

At 14 Am.Jur.2d, Certiorari § 11, p. 787, the text says:

"Under the prevailing practice, a writ of certiorari will not issue if there is another adequate remedy, such as an appeal or writ of error, an action at law or in equity, or intervention with the right of appeal secured. It is only in cases of unusual hardship and in the furtherance of justice that the use of a writ of certiorari is permitted to supplement the method of review expressly provided by statute."

We said in *Call v. Town of Afton,* supra, 278 P.2d at 273:

"* * * We have two statutory methods of reviewing judgments of the district court, one by proceeding in error and one by direct appeal. Counsel for petitioners

asks us to disregard them despite the ordinary rule that the writ of certiorari will not ordinarily issue in those cases in which there is a plain, speedy and adequate remedy by appeal. 14 C.J.S., Certiorari, § 39, p. 185, 10 Am.Jur. 531, § 7."

We then took note of the fact that the legislature had abolished the writ of certiorari (in civil cases),[10] but observed that the writ was provided for in the Constitution and that

" * * * [p]erhaps neither the statute nor the Constitution should be entirely disregarded,"

and that effect might be given to both the Constitution and the statute

" * * * by keeping the provisions of the Constitution *within its proper limits*." (Emphasis added.)

When we said "within its proper limits," the court meant, in my opinion at least, within the limits of the common law. *City of Sheridan v. Cadle,* supra.

Where certiorari is authorized by the statute and/or constitution but there is no provision for its utilization in a particular type of proceeding, the common-law writ is available and the rules pertaining thereto apply. 14 Am.Jur.2d, Certiorari § 6, Availability and use of common-law writ, p. 782. The encyclopedia cites *Morris v. Apodaca,* 66 N.M. 421, 349 P.2d 335, 336 (1960), where it is said:

"We have no constitutional or statutory definition of 'certiorari' as it applies to this type of proceeding, although, generally, by the constitution and statute, the district and supreme courts are authorized to issue writs of certiorari. Therefore, it would follow that what is known as the common law writ of certiorari would apply. This being true, it can generally be stated that certiorari will lie in two classes of cases, (1) whenever it is shown that the inferior court or tribunal has exceeded its jurisdiction; (2) whenever it

is shown that the inferior court or tribunal has proceeded illegally, and no appeal is allowed or other mode provided for reviewing its proceedings. 10 Am.Jur. 527, Certiorari, § 5."

The class of cases in which the common-law writ of certiorari will lie is set out at 14 Am.Jur.2d, Certiorari § 6, pp. 782–783, as follows:

"Availability and use of common-law writ.

"Though generally the courts are authorized by the constitution and statute to issue writs of certiorari, where there is no constitutional or statutory provision for certiorari as to a particular type of proceeding, what is known as the common-law writ of certiorari would be available.

"Primarily there are two classes of cases in which a common-law writ of certiorari will lie: (1) wherever it is shown that the inferior court or tribunal has exceeded its jurisdiction; (2) wherever it is shown that the inferior court or tribunal has proceeded illegally and no appeal is allowed or other mode provided for reviewing its proceedings. The petitioner must generally establish either that the proceedings are infected with some fatal irregularity rendering them absolutely void, that the jurisdiction of the cause did not belong to the tribunal which assumed it but to a different tribunal, or that the cause is one not within the limits of judicial power. In other words, the inquiry contemplated is in reference to the power of the court, not the irregularity or correctness of its action. Certiorari does not lie in any case unless petitioner can satisfy the court that there is involved a question of jurisdiction of the inferior court or tribunal which is raised originally by his petition, that he has no other adequate remedy, or that review by certiorari is necessary to avoid great injury or unusual

10. Section 3–5323, W.C.S.1945 read:
"Writs of error and certiorari abolished.— Writs of error and certiorari to reverse, vacate or modify judgments or final orders in civil cases are abolished; but court shall have the same power to compel transcripts of the proceedings containing the judgment or final order sought to be reversed, to be furnished, completed or perfected as they heretofore had under writs of error and certiorari."

hardship which would result from the delay involved in pursuing another remedy."

In observing that Wisconsin has a constitutional provision like ours, the opinion in *Call v. Town of Afton,* supra, 278 P.2d at 273–274, then went on to quote *Wardsworth v. Sibley,* 38 Wis. 484, 486, where the Wisconsin Supreme Court said:

" 'The constitution refers to the writ as it was used and applied in practice when the constitution was adopted, and did not intend to give it a scope or object different from its original and appropriate function. * * * But we think it would be contrary to all practice and all precedent to make it a substitute for a writ of error or appeal, to bring up for review the final judgments of courts of record proceeding according to the course of the common law.' The court also stated: 'The general rule as laid down in the books is, that a common law certiorari will not issue where a party has another adequate remedy; and it is certainly a novel application of such a writ to make it perform the office of a writ of error to bring up for review a final judgment of a court of record.' It seems that the state of Massachusetts has a statute similar to our constitutional provision above mentioned. *Inhabitants of Mendon v. County Commissioners of Worcester,* 2 Allen, Mass., 463. *In Re Cooke,* 15 Pick., Mass., 234, 237, the court discussed the common-law rules relating to certiorari. The court stated in part: 'The question is, what is the legal and proper remedy or process, for the purpose of correcting any error in the proceedings, after final judgment rendered, or the final decision of the cause; and it seems to be well settled, by the English authorities, that after final judgment in a court of record, proceeding according to the course of the common law, the only remedy is by writ of error. But where the court below is not a court of record, or does not proceed according to the course of the common law, no writ of error will lie, and the proper remedy is by certiorari.' "

This court, in *Call v. Town of Afton,* supra, 278 P.2d at 274, then went on to reject the concept which says that even though there is an adequate appellate remedy,

" * * * 'An exception has frequently been made * * * when necessary to prevent a failure of justice.' [Quoting from *Rapid Ry. Co. v. Michigan Public Utilities Commission,* 225 Mich. 425, 196 N.W. 518, 519. (See 14 C.J.S., Certiorari, § 37, pp. 181, 182]."

Justice Blume, in formulating our rejection, says:

" * * * To carry that rule to its logical conclusion would seem to mean that every time we should dismiss an appeal because of non-compliance with the statutory rules relating to petition in error or direct appeal, or because of non-compliance with the rules of this court, we might nevertheless, in our discretion, issue a writ of certiorari in the same case, since injustice in the broad sense might result in such cases by the dismissal. That would, of course, upset and to a large extent nullify our statutory provisions on appeal and the decisions of this court relating thereto." 278 P.2d at 274.

The Justice, speaking for the court, then approves the rule which holds:

" ' * * * [I]n a proper case a party entitled to appeal or to pursue some other remedy, who has lost the right *through inadvertence, accident, or mistake,* may have a remedy by certiorari, provided there is a showing of probable merits and freedom from fault.' [Quoting from 14 C.J.S., Certiorari, § 40, p. 189] (See also 10 Am.Jur. 531, 532, § 7)." (Emphasis added) 278 P.2d at 275,

and resigns the court to deciding the case before it

" * * * under the so-called rule last stated and the rule that ordinarily a writ of certiorari is not granted if there is another plain, speedy and adequate remedy, and in the light of the fact that no question of jurisdiction or excess thereof is involved herein." 278 P.2d at 275.

The scope of the appellate jurisdiction of this court is set out in Art. 5, § 2 of the Wyoming Constitution, supra. That section limits the scope of the "general appellate jurisdiction" conferred upon this court to that authorized "under such rules and regulations as may be prescribed by law." The legislature by statute and this court by rule have spoken extensively in this area, detailing those situations in which the appellate jurisdiction may be exercised and prescribing the manner in which one must proceed. This body of law delineates the scope of appellate review in this state, and if certiorari is to be invoked, it must be under the rules identified by the common law,[11] one of which is that certiorari will not be granted where there is otherwise an adequate remedy by way of appeal. *Call v. Town of Afton, supra.* Rule 1.04 of the Wyoming Rules of Appellate Procedure provides to criminal defendants a plain, speedy and adequate remedy by way of appeal for the correction of errors made by the court of first instance in arriving at a judgment:

"A judgment rendered or final order made by a district court may be reversed in whole or in part, vacated or modified by the Supreme Court for errors appearing on the record."

In application of these propositions to the case at bar, I agree with the majority of the justices when they hold that this court has retained the power of appellate review under circumstances such as those with which we are here concerned. At p. 1092 of the majority opinion, Chief Justice Rooney, writing for the court, says:

"As long ago as 1927, we indicated that we would modify a legal sentence if the trial court abused its discretion in imposing it. *State v. Sorrentino,* 36 Wyo. 111, 253 P. 14, 16 (1927). Since then, we have repeatedly set forth the fact that a sentence will be reviewed for abuse of discretion. *Cavanagh v. State,* Wyo., 505 P.2d 311 (1973); *Peterson v. State,* Wyo., 586 P.2d 144 (1978); *Sanchez v. State,* Wyo., 592 P.2d 1130 (1979); *Jones v.*

*State,* Wyo., 602 P.2d 378 (1979); *Buck v. State,* Wyo., 603 P.2d 878 (1979); *Sorenson v. State,* Wyo., 604 P.2d 1031 (1979); *Kenney v. State,* Wyo., 605 P.2d 811 (1980); *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981); *Daniel v. State,* Wyo., 644 P.2d 172 (1982); *Taylor v. State,* Wyo., 658 P.2d 1297 (1983); and *Eaton v. State,* Wyo., 660 P.2d 803 (1983).

"In *Scheikofsky v. State,* supra, 636 P.2d 1107 at 1112–1113, we said:

" 'This court has stated its approach to sentence review many times. If a trial court's determination of the terms of imprisonment is within the statutory limits, it will not be disturbed absent a clear abuse of discretion.' *Hanson v. State,* Wyo., 590 P.2d 832, 835 (1979); *Jones v. State,* Wyo., 602 P.2d 378, 380 (1979); *Smith v. State,* Wyo., 564 P.2d 1194, 1202 (1977); *Daellenbach v. State,* supra, at 683 [562 P.2d 679 (1977) ]. A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *Hicklin v. State,* Wyo., 535 P.2d 743, 751, 79 A.L.R.3d 1050 (1975). That is a nebulous standard, but it is as precise as we care to make it. We have an abiding reluctance to review a trial judge's determination of sentence. The determination is a burdensome decision which no trial judge could lightly make and which we will not lightly overturn."

The opinions from this court cited by the majority stand for the proposition that a legal sentence may be modified if the trial court abused its discretion in imposing it. Until today, however, this court had never adopted standards by which we could determine whether a sentence within statutory limits constituted an abuse of the trial judge's discretion. As a result of our failure to adopt such standards, there was small possibility that this court would upset

---

**11.** *City of Sheridan v. Cadle,* supra.

a legal sentence, and, as Justice Thomas points out, we have, "as a matter of practice," followed the common-law rule when reviewing sentences.

With the development of standards against which to review trial judges' sentences for abuse of discretion, we are now free to abandon the common-law position—even if that is the rule of this court on the subject as Justice Thomas contends. In so doing, we would be following the lead of the highest courts of numerous other states [12] that have recognized their appellate obligation to insure that sentencing fairly conforms to the lawful purposes of incarceration. This leads to the conclusion that there is a speedy and adequate review procedure available to Grant Wright which would preclude his utilizing certiorari.

### SUMMARY

In dissent, I would hold that the majority is in error when it refuses to hold that the district court abused its discretion. I would warn that the district courts of Wyoming may well be divested of jurisdiction to reduce a sentence of incarceration to probation after the defendant has commenced serving time. I would comment upon Justice Thomas' willingness to review the district judge's sentence of Grant Wright by observing that this is not the office of the writ.

Finally, it would be my hope that the Governor, in his executive capacity, will not be as unfeeling in his response to the pleas of this young man as the judicial branch of the government has been.

CARDINE, Justice, dissenting, with whom ROSE, Justice, joins.

I dissent.

We are reluctant to interfere in the sentencing process, and that is as it should be. The sentencing judge has presided at the trial, observed the witnesses, has a feel for the magnitude of the incident and the parties before him, and is in the best position to determine an appropriate disposition. However to say that we will never review a sentence would be unreasonable, for surely on some occasion a sentence might be improper. Thus, I agree with the majority, that where there has been an abuse of discretion in imposing sentence, the sentence should be modified. In this case I would find an abuse of discretion.

At the time of this incident, appellant was twenty years of age. He was a scholarship, honor student at Sheridan College enrolled in courses in physics, introduction to mining, metal, and welding. His only prior involvement with the law was a traffic citation. On the night in question, at 2:00 a.m., he was hitchhiking home to Story, Wyoming. He and a friend, Jones, were given a ride by the undercover agents. It was a February night, very cold, and the roads were slick. Appellant had no marijuana with him, was not attempting to sell marijuana, had not solicited anyone for the sale of marijuana, and there is no evidence that he had ever been involved in such activities. There was no dispute in the testimony over who first brought up the question of drugs. The agents were in Sheridan for the sole and express purpose of purchasing drugs. Even they would not have us believe that they did not attempt to accomplish their purpose by asking others whether they had drugs for sale. In this case, taking the evidence most favorable to the prosecution, it is clear that the agents first inquired of Jones where they could obtain drugs. At trial, their position was that although Wright was in the car, they

**12.** See: *Ripley v. State,* Alaska, 590 P.2d 48 (1979); *State v. Adair,* 99 Idaho 703, 587 P.2d 1238 (1978); *State v. Erickson,* Minn., 313 N.W.2d 16 (1981); *State v. Mucie,* Mo., 448 S.W.2d 879, cert. denied 398 U.S. 938 (1970); *State v. Johnson,* 67 N.J.Super. 414, 170 A.2d 830 (1961); *Montalto v. State,* 51 Ohio App. 6, 199 N.E. 198 (1935); *Commonwealth v. Warner,* 227 Pa.Super. 291, 324 A.2d 361 (1974);

*State v. Fortes,* 114 R.I. 161, 330 A.2d 404 (1975); *State v. Tuttle,* 21 Wis.2d 147, 124 N.W.2d 9 (1963); Annot., 89 A.L.R. 295, Reduction by appellate court of punishment imposed by trial court; Comment, Criminal Procedure— Appealability of a Criminal Sentence—Sentence Modified on Appeal, 16 Rutgers Law Rev. 186 (1961).

were not talking to Wright. Thus, when Wright became involved in the conversation and said he had some marijuana, they took the position that, as between Wright and Agent Young, Wright first brought up the subject. I quote from the majority opinion:

"Witness Miller testified:

"'Q. *As between Agent Young and Mr. Wright,* who was the individual that first brought up purchasing marijuana?

"'A. Mr. Wright.'"[1] (Emphasis added.)

Officer Miller further testified as follows:

"Q. And what did Mr. Wright, the defendant, say?

"A. He stated that he had—it was a statement. He just said during the conversation of Jones and myself—he just spoke out and said that he had some marijuana at his house.

    \*    \*    \*    \*    \*    \*

"Q. What did he advise you?

"A. He said he had a baggy of his own personal stash and that he would give me half of it."

Thus, among all of the occupants in the car, the agents first mentioned that subject; but, as between Agent Young and Wright, Wright first mentioned the subject of marijuana.

Subsequently the officers continued to contact Jones asking if he would sell them some marijuana. On both occasions, Jones said he did not have any, and they finally left him alone.

On the evidence presented, the jury could find Grant Wright guilty of the crime charged, "delivery" of a controlled substance. But, "delivery" may be by a "dealer"[2] or by a young boy who gives to another one-half of a small amount of marijuana which he possesses. Grant Wright admitted the delivery, but felt that, upon the evidence, the jury could find that he was entrapped by the officers. The jury found there was no entrapment. I have no problem with that finding, nor do I believe it

was necessary to find that anyone lied to arrive at that result under the law.

It is distressing that we are caught up in a game of semantics involving "delivery," "dealing," and who said what first. Our concern ought to be now that upon the undisputed evidence and record before us a young boy, twenty years of age with no prior criminal record, attending junior college and doing well, is to serve a term of two to four years in the state penitentiary over this incident. It is clear from the record that Wright was not a dealer in drugs nor engaged in the business. He did not appear on the list of persons targeted in this drug investigation. It was just happenstance that he received a ride from two undercover officers while hitchhiking home at 2:00 a.m. in the morning. Quoting again the evidence most favorable to the prosecution, Officer Miller testified:

"Q. Did your team have a target list?

"A. We had some people that we knew that were in this area.

    \*    \*    \*    \*    \*    \*

"Q. Grant Wright was not one of those persons and David Jones was not one of those persons?

"A. No, sir.

"Q. Then at no time did anyone supply you with the name of Grant Wright or David Jones as drug dealers?

"A. No, sir.

    \*    \*    \*    \*    \*    \*

"Q. The first time you had ever heard of them was on February 23 about 2:10 in the morning?

"A. That's correct.

"Q. You picked them up. Then previous to the time that you met Grant Wright you had no evidence or even a suspicion that he was in anyway [sic] involved in any drug dealings?

"A. No, sir. That's correct.

"Q. That's—and since that time you have come up with nothing else. May I

---

**1.** See majority opinion, page 1096, quote from transcript of testimony.

**2.** The term "dealer in drugs" as used herein refers to one regularly engaged in selling drugs as opposed to the single instance described.

assume you have come up with nothing else concerning Grant Wright and drugs? "A. No, I haven't heard anything."

The majority states that the same crime can result in different sentences, and I agree. Thus, two young men can each be involved in the delivery of a controlled substance. One of them may be engaged in the business of selling for profit, actively over a long period of time. Another may have succumbed to the desire to please one who had done a favor or represented himself as a friend and given half of what he possessed in the way of a small packet of marijuana just because of this urging. The former case, perhaps, should carry a prison sentence, while the latter might properly be disposed of with probation.

It was suggested that perhaps appellant was not remorseful. He should be, for without question he possessed marijuana contrary to law. We are all saddened when gifted athletes, performers, and scholars surrender a promising future or what otherwise might be a brillant career to drugs. Some overcome the problem. Some never do. Thus, appellant should be aware that the effort mounted to deal with the drug problem is beneficial and one generally approved by society. The trial judge noted the potential for correction of the sentence within 120 days. Justice Rose in his dissent concludes that the trial court may not, once Grant Wright is placed in the penitentiary, change his sentence to probation. I agree. Therefore, I am of the opinion the sentence of two to four years in the state penitentiary is unduly harsh considering the crime and the circumstances involved; such sentence was an abuse of discretion, and should be modified.